Filed 8/7/14  In re A.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.A.,  et al., Persons Coming Under the Juvenile Court Law. | B252512<br>(Los Angeles County<br>Super. Ct. No. CK77899) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>SANDRA G.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The court took jurisdiction over mother's four children (ages 8, 4, 2, and newborn) after the youngest M.L. was born with a positive toxicology for amphetamine. Mother, Sandra G. challenges the admission of the positive drug test and argues that no substantial evidence supported jurisdiction. We affirm.

**FACTS AND PROCEDURE**

*1. Current Petition and Prior Proceedings*

On May 1, 2013, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition, which as subsequently sustained, alleged that M.L. was born with a positive toxicology for amphetamine which placed him and his three siblings at risk of physical harm. The petition further alleged that mother had an unresolved history of drug abuse rendering her unable to provide regular care for her children. The petition alleged that mother had a history of depression and failed to take her prescribed medication. It also alleged that father, Benjamin J. was unable to provide ongoing care for the children.[1]

Prior history showed that mother failed to protect M.L.'s siblings from a male companion who fractured mother's daughter B.S.'s jaw. The male companion also inflicted domestic violence on mother. Mother initially lied to DCFS, telling a social worker she had been assaulted by a stranger.

*2. DCFS Reports*

An exhibit attached to the detention report indicated that on April 25 and 26, 2013, M.L.'s "value" for amphetamine was positive. Mother challenged the admission of the test result. M.L. was born healthy without any withdrawal symptoms. Mother's older two children showed no understanding of drugs and never saw mother under the influence of a controlled substance.

An unidentified person reported that M.L. tested positive for amphetamine on April 25, 2013. Mother initially categorically denied drug use. When questioned again

---

[1]     Benjamin was the father of the two younger children. All references to father are to Benjamin.

by a social worker, mother admitted that she used methamphetamine regularly twice a week but she stated that she stopped when she learned she was pregnant. Subsequently, mother acknowledged smoking methamphetamine during her pregnancy and stated that she used the drug to treat her depression. Mother told the social worker that she had been prescribed medication for depression but did not take the medication.

On a later date, mother emphatically denied using methamphetamine and denied admitting that she had. She arranged to have her hair follicle tested, and it indicated a negative result for methamphetamine. DCFS recommended mother repeat the test at a DCFS approved laboratory, which mother did and again tested negative. DCFS reported that the test showed mother did not use controlled substances at the time of the test – August 21, 2013 – but did not contradict the allegations that she used methamphetamine during her pregnancy. Mother's random drug tests also were negative.

Father told a social worker that DCFS would not release the children to him because of his criminal history. Father stated that he had been convicted on drug trafficking and gun charges. Father stated that if the children were released to him he would like them placed with a close friend.

### 3. Jurisdictional Hearing

Prior to the jurisdictional hearing, mother objected to the admission of the test showing M.L. was positive for amphetamine. She argued that the results were not authenticated and no explanation of them had been provided. Mother indicated that the hospital had mishandled M.L.'s toxicology screen. When she testified at the jurisdictional hearing, mother denied using methamphetamine and testified she was not prescribed medication for depression. Father did not hear mother tell a social worker she used methamphetamine.

DCFS recommended that the children be placed in mother's custody and mother be provided family maintenance services.

The court sustained the allegations as summarized above. It ordered the children remain in mother's custody, finding no sufficient detriment to justify removal. Mother

3

was ordered to attend counseling to address depression. She also was required to participate in a drug and alcohol treatment program. On February 27, 2014, the court terminated jurisdiction. Mother was ordered to have sole physical and legal custody of the children.

## DISCUSSION

Mother argues that no substantial evidence supported jurisdiction and therefore the court's jurisdictional and dispositional orders must be reversed. Respondent argues the case is moot because the juvenile court terminated jurisdiction in February 2014.

### 1. The Case Is Not Moot

"'[A] case becomes moot when any ruling by this court can have no practical impact or provide the parties effectual relief. [Citation.]'" (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321.) "As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.] However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' [Citations.]" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) Termination of jurisdiction does not render an appeal from a previous order moot if the appellant would suffer future unfair consequences as a result of that order. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 716; see also *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.) Here, the jurisdictional finding as to mother, if erroneous, could impact her in future family law or dependency proceedings. (*Ibid.*)

### 2. The Juvenile Court Could Consider M.L.'s Positive Drug Test

Mother objected to the admission of M.L.'s positive test for amphetamine under Welfare and Institutions Code section 355.[2] That statute provides with exceptions not relevant here that: "If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific

---

[2] Undesignated statutory citations are to the Welfare and Institutions Code.

hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based. . . ." (§ 355, subd. (c)(1).)

Under this statute, uncorroborated evidence may not be used "as the exclusive basis for finding jurisdiction . . . ." (*In re B.D.* (2007) 156 Cal.App.4th 975, 984.) In this context, "[c]orroborating evidence is evidence which supports a logical and reasonable inference that the act described in the hearsay statement occurred." (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1280.) "Corroborating evidence is '[e]vidence supplementary to that already given and tending to strengthen or confirm it [a]dditional evidence of a different character to the same point.' [Citation.]" (*In re B.D., supra*, at p. 984.)

Here, the drug test was corroborated by mother's admissions that she used methamphetamine. She admitted using it regularly and during her pregnancy. This evidence created a reasonable inference that her newborn child would test positive for a controlled substance. The court must have credited mother's admissions – rather than mother's subsequent denials – when it concluded that the evidence of the positive drug test was admissible.

### 3. Substantial Evidence Supported the Court's Jurisdictional and Dispositional Orders

Mother argues no substantial evidence supported jurisdiction. "'We review the entire record to determine whether substantial evidence supports the court's finding. We resolve all conflicts, and draw all reasonable inferences in support of the findings. [Citation.] "We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts. The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders."'" [Citation.] "'Substantial evidence does not mean any evidence; it must be ""substantial" proof of the essentials which the law requires.'" [Citation.] "To be sufficient to sustain a juvenile dependency petition[,] the evidence must be '"reasonable, credible, and of solid value"' such that the court reasonably could find the child to be a dependent of the court by clear and convincing evidence." [Citation.] A mere "scintilla" of evidence is not enough.'" (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 726.)

"[T]he Legislature has declared, 'The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is a "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

The allegation that M.L. was born with a positive toxicology for amphetamine which placed him and his three siblings at risk of physical harm was supported by substantial evidence. The previously discussed evidence that M.L. was born with a positive toxicology for amphetamine and mother admitted using methamphetamine supported the juvenile court's assumption of jurisdiction. (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1217.) Mother's use of methamphetamine while pregnant reflects a severe lack of judgment supporting the inference that she was unable to responsibly care for her children.

Mother's focus on her negative hair follicle tests is misplaced because the juvenile court must have credited mother's admissions, and it is not the function of this court to reweigh credibility.[3] (*In re Marquis H., supra*, 212 Cal.App.4th at pp. 726-727.) The juvenile court could have found mother's in court testimony lacked credibility especially given that mother lied in a prior proceeding about being assaulted by a stranger.

---

[3] Because we conclude jurisdiction was appropriate on the basis that M.L. was born with a positive toxicology for amphetamine placing him and his siblings at risk of harm, we need not consider whether substantial evidence supported the other grounds. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762.) Although one of the allegations concerned father, father did not appeal and does not contest the evidence supporting that allegation.

Assuming the juvenile court could have reached a different conclusion, reversal still is not warranted because substantial evidence supported the juvenile court's conclusion.

Finally, mother argues that the dispositional order must be reversed because there was no basis for jurisdiction. Because jurisdiction was proper this argument lacks merit.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

7