Filed 9/15/14  P. v. Sorisho CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064170 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD245904) |
| EDWARD A. SORISHO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant Edward A. Sorisho appeals a judgment of conviction after a jury trial. On appeal, Sorisho contends that the trial court erred in sustaining the prosecutor's objection to a portion of defense counsel's closing argument in which defense counsel was attempting to elucidate the meaning of "abiding conviction" as that phrase is used in the instruction regarding reasonable doubt. Sorisho also argues that he should be serving his sentence in county jail, rather than state prison, pursuant to subdivision (h) of section 1170 of the Penal Code, and that we should vacate his sentence and remand the matter to the trial court for resentencing.

We conclude that the trial court did not abuse its discretion in sustaining the prosecutor's objection to defense counsel's closing argument regarding the reasonable doubt standard. Further, even if the trial court had erred in this regard, the jury was properly instructed on the reasonable doubt standard, and Sorisho thus suffered no prejudice.

With respect to Sorisho's argument concerning his sentence, both the People and Sorisho agree that events that occurred in the trial court subsequent to the parties' filing their briefs on appeal have rendered this issue moot. Specifically, while this case was pending on appeal, the trial court amended the minute order and abstract of judgment to reflect that Sorisho is to serve his term in county jail, which is the relief that Sorisho was

seeking on appeal.  We therefore affirm the judgment, as amended by the trial court with respect to Sorisho's sentence.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

1.    *The prosecution's case*

On January 26, 2013, San Diego Police Officer Casey Campbell and his partner, Officer Benjamin Douglas, responded to a call reporting a "sleeper" in the Clairemont area of San Diego.  A "sleeper" refers to a situation in which someone is living and sleeping inside a motorhome that is parked on the street.  When the officers arrived at the location of the motorhome, they saw that all of the windows were covered, which prevented anyone outside the motorhome from being able to see inside.

The officers knocked on the door to the motorhome and three men came out. Sorisho was one of the men who exited the motorhome.  The last man to exit the motorhome was Richard Keeley.  Keeley appeared nervous.  Officer Douglas asked Keeley why he was nervous, and Keeley stated that he was on parole and that there was a warrant out for his arrest.

Officer Campbell asked Sorisho about the motorhome.  Sorisho said that he had borrowed the motorhome from his friend, Jerry Fields, and had temporarily parked it on the street in order to repair it.  Campbell proceeded to search the motorhome.  Campbell found a black backpack on a table.  Inside the backpack was a large stack of cash, and a

3

large plastic bag with 14 smaller plastic bags inside of it. The smaller plastic bags all contained a white crystalline substance. Campbell counted the cash, which totaled approximately $1,200. The backpack also contained a black case in which officers found a glass pipe and a brown wallet. Inside the wallet, Campbell found a California identification card for Sorisho, other cards, and approximately $500 in cash.

Officer Campbell stepped out of the motorhome and inquired of Sorisho, "Hey, the backpack with your wallet in it, is that yours?" Sorisho responded, "Yes." Campbell went back inside the motorhome to continue his search. He did not find any additional contraband. After completing the search, Campbell arrested Sorisho and Keeley.

Sorisho initially agreed to give a statement. However, after being read his rights, he did not respond to Campbell's questions. Instead, Sorisho said that he did not feel well and did not want to talk.

The crystalline substance in one of the 14 small bags was tested and was determined to be methamphetamine. The bag that was tested contained 27.65 grams of methamphetamine. The total weight of the methamphetamine from all 14 bags was 110.59 grams. A prosecution expert testified that one could get 1,100 uses from the 110.59 grams of methamphetamine. The expert opined that the 110.59 grams was possessed for purposes of sale, based on the amount of methamphetamine, the packaging of the 110.59 grams, the amount of cash found with the drugs, and the fact that Sorisho was not under the influence of the drug at the time of his arrest.

4

2. *The defense case*

Sorisho testified that he was watching the motorhome for a friend, and said that he moved it around to prevent it from being impounded. Sorisho said that he never slept in the motorhome, and that on four or five occasions when he would arrive to move the motorhome, he would find people inside whom he did not know.

According to Sorisho, he had lost his wallet prior to his arrest, and he did not know that his wallet was inside the black backpack. He claimed that the backpack did not belong to him. On the day of these events, when an officer asked Sorisho whether he owned a black bag that had a wallet inside, Sorisho explained that he had responded, "I guess," because he assumed that the officer was referring to his black computer bag. Sorisho was glad that the officer seemed to have found his wallet. According to Sorisho, there were a number of bags inside the motorhome that did not belong to him.

Sorisho acknowledged having incurred three prior drug-related convictions, explaining that he had previously been an addict and had sold drugs.

Sorisho also called as a witness the third man who had been in the motorhome on the day Sorisho was arrested to testify in his defense. This man's account of the events leading up to Sorisho's arrest was generally consistent with Sorisho's testimony.

5

B.    *Procedural background*

The San Diego District Attorney filed a complaint charging Sorisho with possession of a controlled substance for purposes of sale (Health & Saf. Code, § 11378).[1] The complaint also alleged that Sorisho had suffered three prior convictions for possession, within the meaning of Health and Safety Code section 11370.2, subdivision (c), and one prior conviction for possession, within the meaning of Penal Code section 1203.07, subdivision (a)(11).  The complaint further alleged that Sorisho had suffered three probation denial priors, within the meaning of Penal Code section 1203, subdivision (e)(4), and two prison priors, within the meaning of Penal Code sections 667.5, subdivision (b) and 668.

A jury found Sorisho guilty of the charged offense on April 18, 2013.  In a bifurcated proceeding, the trial court found true all of the allegations regarding Sorisho's prior convictions.

The trial court denied probation and imposed a three-year custody term.  Sorisho filed a timely notice of appeal.

---

[1]    Two weeks later, counsel stipulated that the complaint would be deemed to be an information.

DISCUSSION

A.   *The trial court properly sustained the prosecutor's objection to defense counsel's argument regarding the meaning of "beyond a reasonable doubt"*

Sorisho contends that the trial court erred in sustaining an objection to defense counsel's description of an "abiding conviction" with respect to the reasonable doubt standard during closing argument, and that in sustaining the objection, the court effectively lowered the prosecution's burden of proof.

1.   *Additional background*

Early in the trial, the trial court provided the jury with a preliminary instruction on reasonable doubt.[2]   Prior to closing arguments, the trial court instructed the jury with a number of instructions relevant to Sorisho's appeal, including CALCRIM No. 200, which informed the jury, in relevant part:

> "You must follow the law as I explain it to you even if you disagree with it.  If you believe that the attorney's comments on the law conflict with my instructions, you must follow my instructions."

The trial court also instructed the jury with CALCRIM No. 220, in which the term "reasonable doubt" is defined:

> "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true.  You must not be biased against the defendant just because he ha[s] been arrested, charged with a crime, or brought to trial.

---

[2]   The trial court makes reference to its preliminary instruction on reasonable doubt on the record.  However, the instruction is not in the record and the trial court's preliminary instructions to the jury were apparently not recorded.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he [is] entitled to an acquittal and you must find him not guilty."

After the trial court instructed the jury, the prosecutor reiterated the prosecution's burden of proof during her closing argument, telling the jurors to "keep in mind that our role as prosecutors is to prove this case to you beyond a reasonable doubt."

Defense counsel attempted to explain the concept of "reasonable doubt" in his closing argument. He began by stating:

"So what is reasonable doubt? Well, there is a legal definition, and it involved this term, 'abiding conviction that the charge is true.' You have no reasonable doubt if you have an abiding conviction that Mr. Sorisho knew that the drugs were in that backpack.

"What is an abiding conviction if not a deeply held conviction, a long-standing, a long-standing conviction, a conviction that you would have six months from now when you wake up out of a dream—perhaps a nightmare—and wonder if you made the right decision in this case? A deeply held conviction."

8

Defense counsel did not stop there, however.  Instead, he elaborated:

> "Another way to look at it is, would you be comfortable making an
> important decision in your own lives based on the quality of
> evidence in a case like this?  Would you, for example, be willing to
> bet your life savings or be willing to remove a loved one from life
> support or even something as mundane as crossing a street with your
> grandchild, making sure that it was safe because of the traffic
> situation?  It's that feeling of certainty, a degree of certainty."

At that point, the prosecutor objected, arguing that defense counsel was "misstating the burden the People have in this case."  The trial court sustained the objection without comment.

In her rebuttal argument, the prosecutor explained to the jury the need to find guilt beyond a reasonable doubt:

> "And if you want to know what the standard is, it says exactly what
> that standard is on CALCRIM section 220.  This is the standard that
> we have:  Proof beyond a reasonable doubt, a reasonable doubt.
> And that's a critical distinction to make.
>
> "And you're going to look through these jury instructions, and you're
> going to see that word 'reasonable' over and over again because
> what's so great about our law and about the law that you are going to
> be instructed—or that you've been instructed [on], but you will
> receive back in the jury deliveration room, is that all you have to do
> is use your common sense and determine what's reasonable, what's
> reasonable."

2.    *Analysis*

Sorisho contends that the trial court erred in sustaining the prosecutor's objection to defense counsel's expounding on the meaning of an "abiding conviction."  He contends that this lessened the prosecutor's burden of proof by suggesting to the jury that it did not have to have an abiding conviction regarding his guilt.  We conclude that the trial court

9

did not err in sustaining the prosecutor's objection.  In any event, the trial court's sustaining the objection did not lessen the prosecutor's burden of proof, and the jury was properly instructed on that burden, such that Sorisho suffered no prejudice from the trial court's ruling.

Appellate courts have cautioned trial courts not to elaborate on or attempt to improve on the language provided in Penal Code section 1096 or the corresponding and approved criminal jury instructions on the "reasonable doubt" standard, such as that provided in CALJIC No. 2.90.[3]  (See, e.g., *People v. Johnson* (2004) 119 Cal.App.4th 976, 986.)  The Supreme Court has approved of the language of CALCRIM No. 220, as well, which is the language used by the trial court in this case.  (See *People v. Aranda* (2012) 55 Cal.4th 342, 354.)  Given the wariness with which courts regard additions to, elaborations on, and/or attempted clarifications of the meaning of "reasonable doubt," a court's curtailing counsel's efforts to do so during closing argument is unlikely to constitute an abuse of the court's discretion.  (See *People v. Cline* (1998) 60 Cal.App.4th 1327, 1333-1334 [Pen. Code, § 1044 vests the trial court with broad discretion to control conduct of a criminal trial, including closing arguments].)

---

[3]    CALJIC No. 2.90 provides the following definition of "reasonable doubt," which is substantially the same as the definition set forth in CALCRIM No. 220:  "Reasonable doubt is defined as follows:  It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

In attempting to provide further elucidation of the "reasonable doubt" standard, defendant's counsel asked the members of the jury to consider the standard in terms of their personal lives. Defense counsel suggested that the jurors should ask themselves whether they would be willing to "bet [their] life savings" on the verdict or, essentially, risk a loved one's life. In doing so, defense counsel encouraged the jurors to direct their consideration away from the facts of the case and to consider instead multiple emotionally charged personal decisions, potentially playing to the juror's fears, rather than their assessment of the case.

Although Sorisho suggests that the trial court's sustaining of the prosecutor's objection to his attorney's argument was based on his attorney's use of the word "certainty," it is clear from the record that the prosecutor was objecting to more than simply defense counsel's use of the word "certainty." Rather, the objection came after the culmination of defense counsel's references to "making an important decision in [the jurors'] own lives." In addition, defense counsel's suggestion that an abiding conviction could be understood as being "that feeling of certainty" that one would have to hold in order to make the hypothetical decisions defense counsel had just proposed could have created confusion as to the proper standard. "Certain" is defined as "free from doubt." (Black's Law Dict. (5th ed.1979) p. 204.) The "reasonable doubt" standard, by its very terms, does not require that a juror be free from *any* doubt.[4] The court could have

---

4    Although defense counsel immediately said "a *degree* of certainty" (italics added) after saying that an abiding conviction is "that feeling of certainty," the trial court could

11

reasonably concluded that defense counsel's initial reference to a "feeling of certainty" improperly suggested to the jury that it should apply an incorrect standard.

Further, even if we were to assume that the trial court erred in sustaining the prosecutor's objection to defense counsel's argument regarding the meaning of "abiding conviction," the trial court did not lessen the prosecution's burden in doing so, and Sorisho cannot establish that he suffered any prejudice.

Again, the trial court instructed the jury that it was to follow the instructions on the law as provided by the court, pursuant to CALCRIM No. 200. The court also instructed the jury with CALCRIM No. 220, which is the approved instruction regarding the meaning of "reasonable doubt." We presume that the jury understood and followed these instructions. (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.) The jury was informed that it could not find Sorisho guilty unless it was left "with an abiding conviction that the charge [was] true," which is the proper standard for "reasonable doubt." Having properly instructed the jury regarding the meaning of reasonable doubt, the trial court did not lessen the prosecutor's burden by sustaining the prosecutor's objection to defense counsel's attempt to expand on an already proper and sufficient instruction on "reasonable doubt."

_____

have reasonably concluded that counsel's reference to certainty was incorrect, and that counsel's argument on this point would confuse the jury.

B.	*The trial court amended the judgment to reflect that Sorisho is to serve his sentence in county jail*

Sorisho originally contended that the judgment should not reflect that he is to serve his three-year sentence in state prison, but, rather, should reflect that he is to serve his sentence in county jail. He argued that this court should vacate his sentence and remand the matter to the trial court for resentencing.

After the parties had fully briefed this issue on appeal, Sorisho's appellate counsel received notification that there had been further proceedings in the trial court related to Sorisho's sentence. We granted Sorisho's unopposed request to augment the appellate record with the documents related to the trial court's March 14, 2014 hearing. After receiving and reviewing these documents, we requested supplemental briefing from the parties concerning the effect, if any, of these documents on the current appeal. Both parties agree that the trial court's March 14, 2014 resentencing of Sorisho to a term to be served in county jail, rather than in state prison, provided Sorisho with the relief that he was requesting in the second issue that he raised in his appeal. The parties therefore further agree that the trial court's amended judgment renders Sorisho's second appellate issue moot. We agree with the parties that no further action is necessary with respect to Sorisho's contention on appeal that the judgment should reflect that he is to serve his sentence in county jail rather than state prison, since the court's amended judgment

13

accurately reflects this.[5]  " 'As a general rule, an appellate court only decides actual controversies.  It is not the function of the appellate court to render opinions " ' " 'upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' "  [Citation.]  "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief." '  [Citation.]"  (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321.)

IV.

DISPOSITION

The trial court's judgment is affirmed.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

---

[5]    Sorisho's appellate counsel also raised an issue as to whether the trial court awarded Sorisho the correct custody credits when it issued an amended judgment. However, in supplemental briefing dated August 8, 2014, counsel informed this court that as of July 11, 2014, the trial court awarded Sorisho the proper number of custody credits. Sorisho therefore concedes that the judgment, as ultimately amended, reflects the proper sentence.