[No. G044661. Fourth Dist., Div. Three. Dec. 22, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK ALLAN GREGERSON, Defendant and Appellant.

COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton, Anne F. Fraser and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**IKOLA, J.**—Appellant Jack Allan Gregerson, an involuntarily committed mentally disordered offender (MDO), appeals from an order declining to place him in outpatient treatment pursuant to Penal Code section 2972, subdivision (d). He asserts the court wrongly placed the burden of proof on him, and wrongly required him to show the appropriateness of outpatient treatment by a preponderance of the evidence.

We hold the patient bears the burden of proof on this issue, and the standard of proof is "reasonable cause," not preponderance of the evidence. The court shall order outpatient treatment if the patient raises a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective. The order is reviewed on appeal for substantial evidence.

 Here, the court properly placed the burden of proof on appellant, but applied the higher preponderance standard of proof. But we need not remand for a new determination under the proper standard because the parties jointly represent that the court has since placed appellant in outpatient treatment. Accordingly, we will decide the briefed issues to clarify the law, but dismiss the appeal as moot.

## FACTS

Appellant was convicted of voluntary manslaughter in 1992. (See *People v. Gregerson* (June 28, 1994, G013494) [nonpub. opn.].) He was committed as an MDO in 2001. (See Pen. Code, § 2960 et seq.; MDO Act.)[1] His commitment was repeatedly continued by stipulation until November 2010.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

The Orange County District Attorney filed a petition for recommitment in July 2010. At trial, appellant waived his right to a jury and stipulated he met the MDO criteria for a one-year extension. Trial ensued on whether appellant should receive outpatient treatment.

Appellant testified he suffered from paranoid schizophrenia, but claimed it was in remission because he had had no major symptoms in 20 years. He thought anger management was his most serious problem, along with mental illness, but he had addressed that through therapy. He admitted being an alcoholic who still needed to attend Alcoholics Anonymous, though he had not had any alcohol in 18 years. Appellant conceded stabbing a man to death in 1992 and acting violently before then: beating up his father, attacking bar patrons, punching a man at a bar, and hitting and kicking a 77-year-old man. He also conceded his parole was revoked twice for making violent threats, though he claimed one victim (his wife) lied about him threatening her. Appellant had been drinking during some of these incidents, and now knew alcohol triggered his paranoia and violence. He had developed coping strategies and a support system for handling the urge to drink. He knew he needed antipsychotic medication for the rest of his life, and agreed to take it.

Appellant's state hospital psychiatrist also testified. He reported appellant suffered from paranoid schizophrenia with alcohol dependency and personality disorder, which was not in remission. The psychiatrist concluded appellant could be safely treated in outpatient treatment, as appellant was reacting well to his antipsychotic medication and had an adequate relapse-prevention plan.

But the psychiatrist conceded "there's still work to be done to continue to improve [appellant's] insight." It had "been the case with [appellant] over time" that his "insight is not very good." "He hasn't fully demonstrated that he understands" "how his mental illness led to the controlling offense in the first place." Persons suffering from schizophrenia who lack sufficient insight "tend to stop the medications, and they might start using things like alcohol or drugs." Appellant had begun showing improved insight, but the progress was "recent" and "evolving."

Appellant still did not show sufficient "insight into the relationship between violence and his mental illness," according to his psychiatrist. It raises concerns if appellant "believes that anger is his biggest problem, rather than the mental illness," "because anger is not entirely the whole reason why he has had problems. It appears he is missing the role of mental illness. . . . That part of it is not fully grasped." "If he doesn't see the mental illness playing a big role in the offense, if he is just looking at anger alone, chances are that he

might stop taking medications." And appellant still "talks a lot about the role of alcohol"; "when he puts blame on alcohol, and the sole reason, that tells [the psychiatrist] he doesn't fully understand how mental illness plays a role in the controlling offense." Moreover, appellant may not "fully grasp" that future alcohol abuse could induce him to stop his medication and relapse into psychosis and violence. "If he continues to use [alcohol] his judgment will be impaired. His psychosis, psychotic symptoms would deteriorate. He would generally decompensate. Manifest violent behavior. And he will be a danger to people."

The Orange County chief forensic psychologist testified about its conditional release program (CONREP). If appellant were placed at CONREP, he would spend his first 30 days "on lock down" at a "step-down facility" where he would receive treatment "very similar and akin" to a state hospital. He would remain at the facility for another 60 days, gradually "gaining a little bit more freedom." If appellant "does well there," he would be placed at "the most strict board and care" facility that would "administer[] him his medication at its appointed times." He would also go to a hospital for treatment from 8:00 a.m. to 3:00 p.m., five days a week, receive weekly individual therapy and group therapy sessions, and take announced and unannounced weekly drug screens. Appellant "would be required to follow the terms and conditions of CONREP," which would grant him various freedoms as he is able to handle them. After one year, CONREP would review his progress and determine the next step. At any point, CONREP could revoke outpatient treatment if appellant posed a danger to the community, failed a drug screen, or otherwise violated its terms and conditions.

The psychologist had met with appellant for more than 10 years and concluded he could be treated safely and effectively through CONREP. Although he previously lacked insight into his problems, in "the last two years" the psychologist had "seen a change in [appellant], in terms of insight into the crime, and the role his mental illness played, and the interaction of the mental illness with dangerousness." He now understood "so much . . . more about the interaction between his mental illness, substance abuse, and dangerousness," and recognized "the importance of full self-disclosure to CONREP." The psychologist was not concerned appellant thought he was in remission, because that "is a term that's thrown around a lot in a hospital" when someone is not exhibiting symptoms at the moment. And she thought it was appropriate for him to attribute some of his problems with violence to alcohol abuse and anger control issues. But she agreed appellant "could be potentially very dangerous" if he resumed drinking.[2]

---

[2] The parties stipulated to the admission of a court-appointed psychologist's report or reports recommending appellant receive outpatient treatment at CONREP. The record on appeal contains no such report(s).

At the close of evidence, the court declared it was "very conflicted" about this case. It stated "everything looks very good" for appellant, but noted that in his "initial offense someone died." The court was concerned that "if a mistake is made, someone could die. That's what worries me." It observed that if appellant received outpatient treatment, "at some point he is going to have the ability to go down to 7-Eleven and get a six-pack."

After closing argument, the court declined to order outpatient treatment. The statutory scheme designated the fact finder "to be a kind of gatekeeper," tasked to apply "the sensitivity a jury or a judge would have about public safety." Thus, even though the court found the experts generally "believable" and "convincing," as "the gatekeeper" it had to ask whether it was "persuaded by the preponderance of the evidence that it's reasonably safe to release the defendant at this time."

The court conceded it "would go for community outpatient treatment" if appellant had been convicted of assault. "But here," it continued, "if we make a mistake there could be a possibility of a human being losing their life. So, I think the court has to consider . . . what is this man capable of, if he decompensates?" It told appellant, "I would never recover if I released you and you killed somebody."

The court concluded it was "just not there yet about saying someone who took a human life should be released on outpatient." It acknowledged the "good reports about for the last two years," and congratulated appellant on doing "some good things in the last couple of years." "But when you've killed somebody," it explained, "you've got to show it clearer than most people that we can trust you could be out there." The court stated, "If you give me another year, I probably would be ready to do that."

## DISCUSSION

*The MDO Act*

■ "The MDO Act requires [California's Department of Corrections and Rehabilitation] to 'evaluate each prisoner for severe mental disorders during the first year of the prisoner's sentence' and 'provide [MDO prisoners] with an appropriate level of mental health treatment while in prison and when returned to the community.' [Citation.] Accordingly, '[a]s a condition of parole, a prisoner may be designated and civilly committed as an MDO for involuntary treatment of a "severe mental disorder" if certain conditions are met.' " (*Blakely v. Superior Court* (2010) 182 Cal.App.4th 1445, 1450 [106

Cal.Rptr.3d 715].) These conditions include: " 'the prisoner has a severe mental disorder' that 'is not in remission, or cannot be kept in remission without treatment,' and which 'was one of the causes or was an aggravating factor in the prisoner's criminal behavior'; 'the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day'; and 'by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others.' " (*Id.* at pp. 1450–1451.)

The initial MDO commitment can be continued. "Not later than 180 days prior to the termination of parole, or release from prison," the district attorney may petition the court to continue MDO treatment for one year. (§ 2970.)

■ Section 2972 sets forth the procedures for the hearing of a petition for continued MDO treatment. "The court shall conduct a hearing on the petition . . . ," and the prisoner has the right to a jury trial. (§ 2972, subd. (a).) "The standard of proof under this section shall be proof beyond a reasonable doubt . . . ." (*Ibid.*) The People are represented by the district attorney, and the prisoner has the right to representation by the public defender. (§ 2972, subd. (b).) The court shall continue commitment for one year if the trier of fact finds that "the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (c).)

Section 2972, subdivision (d), provides an opportunity for continued MDO treatment on outpatient status. "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis." (*Ibid.*)

*The Patient Bears the Burden to Show Outpatient Treatment Would Be Safe and Effective*

At trial, the court raised the issues of "who has the burden of proof[] and what is that burden of proof" when considering release on outpatient treatment. Appellant's counsel denied having the burden of proof: "I really don't think by us being the moving party that we're actually saying that we have the burden." But counsel "concede[d] that the standard . . . should be preponderance of the evidence." The prosecutor asserted "the moving party always has the burden of proof." The court "agreed[] with the People that [appellant has] the burden, and it's by the preponderance."

On appeal, appellant maintains he should not bear the burden of proof. He contends "there is no moving party under . . . section 2972, subdivision (d)" and "the statute directly places the obligation to decide the issue on the trial court without imposing the burden of proof on either party."

Our analysis starts with Evidence Code section 500: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." This places the burden squarely on appellant, who seeks relief by way of outpatient treatment. (Cf. *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1407 [105 Cal.Rptr.3d 560] [sexually violent predator seeking unconditional discharge from commitment bears burden]; *People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1117–1118 [38 Cal.Rptr.2d 556] [person found not guilty by reason of insanity seeking state hospital grounds pass bears burden].)

■ Appellant denies claiming any relief. He states the statutory scheme requires the court to consider outpatient treatment on its own. But "there is no sua sponte duty on the part of the trial court to determine whether a[n MDO] can be safely and effectively treated on an outpatient basis." (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1382 [78 Cal.Rptr.3d 455] (*Rish*).) A patient who does not seek "a determination from the trial court as to whether he [or she] was suitable for outpatient treatment . . . forfeit[s] his [or her] claim that the trial court erred in failing to make such a ruling." (*Id.* at p. 1384.) Thus, the court must consider outpatient treatment only in response to a request.[3] And here, appellant plainly requested relief—his trial counsel described him as "the moving party" and referred to "our motion."[4]

■ Even without an express request, appellant is the one who would benefit from obtaining outpatient treatment. "The burden of proof is to law what inertia is to physics—a built-in bias in favor of the status quo. [Citation.] That is, if you want the court to *do* something, you have to present evidence sufficient to overcome the state of affairs that would exist if the court did nothing. Of course, the hard work for courts presented with burden of proof issues is to ascertain the true nature of the status quo, or the baseline

---

[3] On the other hand, the court does not err if it considers outpatient treatment sua sponte. (*People v. May* (2007) 155 Cal.App.4th 350, 363 [65 Cal.Rptr.3d 873] (*May*).)

[4] The *Rish* court left open "the issue of the trial court's duty, if any, where the evidence presented is sufficient to make a finding that the person can be safely and effectively treated on an outpatient basis but neither party requests such a finding." (*Rish, supra,* 163 Cal.App.4th at p. 1382, fn. 3.) Appellant's request means that issue is not raised here, either.

where the court starts." (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1388 [44 Cal.Rptr.3d 906], fn. omitted.)

 The relevant baseline here is recommitment if appellant still meets the MDO criteria. (§ 2972, subd. (c) ["the court shall order the patient recommitted"].) Once continuing MDO status is shown, the status quo becomes continued involuntary commitment—that is the state of affairs that would exist if the court does nothing further. At that point, release on outpatient treatment would upset the "built-in bias in favor of the status quo." (*Conservatorship of Hume, supra*, 140 Cal.App.4th at p. 1388.) And it would upset the status quo to the benefit of appellant.

 " 'The general rule has long been that "He who takes the benefit must bear the burden." ' " (*Samuels v. Mix* (1999) 22 Cal.4th 1, 18 [91 Cal.Rptr.2d 273, 989 P.2d 701] [defendant bears burden to show shortened statute of limitations applies]; accord, *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345 [63 Cal.Rptr.2d 562] [parent bears burden to show statutory exception to parental rights termination—"It is the parent who is concerned with avoiding termination . . . ."].) Appellant appropriately shoulders the burden of showing his suitability for outpatient treatment.

*The Patient's Standard of Proof Is "Reasonable Cause"*

Appellant also questions the standard of proof. He contends "section 297[2], subdivision (d), provides its own burden of proof"—namely, to show "there is a reasonable cause to believe" outpatient treatment would be safe and effective. He analogizes this statute to a provision in the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.; SVPA) requiring the court to conduct a hearing to determine "whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (Welf. & Inst. Code, § 6602, subd. (a).) Moreover, appellant asserts if the evidence leads the trier of fact to two conflicting reasonable beliefs (i.e., it has reason to believe outpatient treatment is safe and effective, but also has reason to doubt that), then it must find in favor of outpatient treatment.

There was no dispute below. Appellant repeatedly conceded the safety and effectiveness of outpatient treatment must be shown by a preponderance of the evidence. In his motion in limine, he stated: "Evidence Code [section] 115 states, except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence. The court should use this standard

for measuring whether o[r] not [appellant] can be safely and effectively treated by CONREP." And he told the court at trial, "I do concede that the standard, if silent, should be preponderance of the evidence." The district attorney below and the Attorney General on appeal agree that Evidence Code section 115 provides for the preponderance standard here.

But courts have addressed "issues that were not properly raised below, 'where those issues were pure questions of law, not turning upon disputed facts, and were pertinent to a proper disposition of the cause or involved matters of particular public importance.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 250, fn. 11 [127 Cal.Rptr.2d 177, 57 P.3d 654] (*Cooley*).) In *Cooley*, the Supreme Court reached "the issue of the correct burden of proof at the SVPA hearing" because it "is a pure question of law and is of significant public importance in that it impacts the effective administration of this statutory scheme." (*Ibid.*)

█ We too will decide an important legal issue, and hold the applicable standard of proof here is set forth in the statute's plain language. The patient must demonstrate "reasonable cause to believe that [he or she] can be safely and effectively treated on an outpatient basis." (§ 2972, subd. (d).)

Guidance for our decision comes from the Supreme Court's similar decree in the SVPA context in *Cooley*. As just noted, *Cooley* resolved "the issue of the correct burden of proof at the SVPA hearing" pursuant to Welfare and Institutions Code section 6602—the statute to which appellant draws his analogy. (*Cooley, supra,* 29 Cal.4th at p. 250, fn. 11.)

Similar to the MDO Act, "[t]he SVPA provides for the involuntary civil commitment of an offender immediately upon release from prison, for a two-year period, if the offender is found to be [a sexually violent predator]. The civil commitment can only commence if, after a trial, either a judge or a unanimous jury finds beyond a reasonable doubt that the person is [a sexually violent predator]." (*Cooley, supra,* 29 Cal.4th at p. 243, citations omitted.) "The trial, however, is the last stage of a complex administrative and judicial process to determine whether an offender should be civilly committed as [a sexually violent predator]." (*Id.* at p. 244.) That process includes screening by the Department of Corrections and Rehabilitation, evaluation by the State Department of Mental Health, and the filing of a commitment petition by the district attorney. (*Ibid.*) "Once the [SVPA] petition has been filed, it is reviewed by a superior court judge to determine whether it 'states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause, the judge

shall order that the person be detained in a secure facility until a hearing can be completed pursuant to [Welfare and Institutions Code] Section 6602.' " (*Id.* at pp. 244–245.)

Welfare and Institutions Code section 6602 was at issue in *Cooley*. "At the hearing, '[a] judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. . . . If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed . . . .' " (*Cooley, supra,* 29 Cal.4th at p. 245.) "Only if the superior court finds that there is probable cause, therefore, does the civil commitment process proceed beyond this initial judicial proceeding to trial." (*Ibid.*)

The lower courts in *Cooley* "applied the 'probable cause' standard as used in the criminal preliminary hearing as the burden of proof" in a Welfare and Institutions Code section 6602 hearing. (*Cooley, supra,* 29 Cal.4th at p. 250.) But the appellant asserted on review "that because proceedings under the SVPA are 'civil' in nature it is 'inappropriate' to apply a 'criminal' standard at this hearing." (*Ibid.*) He instead urged the Supreme Court to hold "the burden of proof at the probable cause hearing is governed by section 115 of the Evidence Code, and that, therefore, the higher burden of 'preponderance of evidence' applies." (*Ibid.*)

*Cooley* noted the "relevant part of [Evidence Code section 115] states: '*Except as otherwise provided by law,* the burden of proof requires proof by preponderance of evidence.' [Citation.] Therefore, although this section of the Evidence Code requires that the 'preponderance of evidence' burden of proof be the default burden in a civil case, the section also allows the Legislature to specify a different burden of proof in certain civil proceedings." (*Cooley, supra,* 29 Cal.4th at pp. 250–251, fn. omitted.)

The court held Welfare and Institutions Code section 6602 "clearly comes within the 'otherwise provided' caveat" by providing the court " 'shall determine whether there is *probable cause* to believe' " the person is likely to engage in sexually violent predatory criminal behavior upon release. (*Cooley, supra,* 29 Cal.4th at p. 251.) "The Law Revision Commission comment to Evidence Code section 115 even states that the ' "sufficient cause" ' burden— analogous to the probable cause burden—is an example of a burden of proof prescribed by law that might be required instead of the preponderance of evidence burden." (*Ibid.*) And it is universally understood that " ' " '[p]robable cause is shown if a man of ordinary caution or prudence would be led to

believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " ' " (*Ibid.*) Thus, "a determination of probable cause by a superior court judge under the SVPA entails a decision *whether a reasonable person could entertain a strong suspicion that the offender is [a sexually violent predator].*" (*Id.* at p. 252.)

▮ The same reasoning applies here. The Legislature "otherwise provided" (Evid. Code, § 115) the standard of proof in determining outpatient treatment is "reasonable cause" (§ 2972, subd. (d)). "Reasonable cause" is akin to the "probable cause" standard applied in *Cooley* and the " 'sufficient cause' " standard noted in the Assembly Committee on Judiciary comment to Evidence Code section 115. (Assem. Com. on Judiciary com., reprinted at 29B pt. 1A, West's Ann. Evid. Code (2011 ed.) foll. § 115, p. 17.) Thus, to obtain outpatient treatment, the patient must raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective.[5] (Cf. *Cooley, supra,* 29 Cal.4th at p. 251 [defining "probable cause"].) The patient need not meet "the higher burden" (*Cooley,* at p. 250) set by the preponderance standard of showing it is more likely than not that outpatient treatment would be safe and effective.

*An Order Applying the Correct Standard of Proof Is Reviewed for Substantial Evidence*

The parties also dispute the standard of review on appeal. The People ask us to review the order for an abuse of discretion. One court presumed this is the proper standard. (*May, supra,* 155 Cal.App.4th at p. 363 [holding court may "exercise its discretion" to order outpatient treatment].) Another court suggested the proper standard is review for substantial evidence. (*Rish, supra,* 163 Cal.App.4th at pp. 1384–1385 [noting appellant who forfeited claim to outpatient treatment also failed to offer sufficient evidence supporting outpatient treatment].)

In this case, as in many others, "[t]he practical differences" between the abuse of discretion and substantial evidence standards of review "are not significant." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [93 Cal.Rptr.2d 644].) " '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should

---

[5] We reject appellant's analysis of how to resolve conflicting reasonable beliefs. Only one reasonable belief is material. If the patient raises reasonable cause to believe outpatient treatment would be safe and effective, the patient "shall be released on outpatient status . . . ." (§ 2972, subd. (d).)

interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' . . ." ' " (*Ibid.*) Even appellant acknowledges it "is not entirely clear that the distinction [between the two standards of review] makes that big of a difference."

■ In the interest of clarity, we hold the court's order is reviewed for substantial evidence. As we just held, the standard of proof at trial is objective and fact driven: Does the evidence raise reasonable cause to believe outpatient treatment would be safe and effective? The evidence does so if it would raise a strong suspicion of that in a person of ordinary prudence. And if it does, the fact finder has no discretion to decide otherwise—the patient "shall be released on outpatient status . . . ." (§ 2972, subd. (d).) *Cooley* aptly noted, "Ordinarily, we would simply review the superior court's factual findings for substantial evidence in order to determine whether to uphold the court's probable cause determination." (*Cooley, supra,* 29 Cal.4th at p. 259.) *Cooley* had no occasion to apply that standard of review because "the entire proceeding was infected with error" due to the trial court's misinterpretation of the SVPA. (*Cooley,* at p. 260.) But it expressly states the proper standard is substantial evidence; nowhere does it suggest the probable cause determination is entrusted to the fact finder's discretion.

■ Accordingly, if the court grants outpatient treatment, its order will be affirmed if substantial evidence shows reasonable cause existed to believe outpatient treatment would be safe and effective. If the court denies outpatient treatment, its order will be affirmed if substantial evidence shows there was no such reasonable cause. In any event, if substantial evidence does not support the court's order, it must be reversed.

*The Subsequent Order Granting Outpatient Treatment Renders the Appeal Moot*

The court's decision here was understandable. Under the preponderance standard of proof urged by both parties, substantial evidence would support its order. The experts agreed appellant had long history of poor insight into his mental illness and its interaction with his alcohol abuse and anger control problems. Only in "the last two years" had appellant shown greater insight—that insight was still "evolving" and "there's still work to be done to continue to improve his insight." Appellant had not "fully grasped" and did not "fully understand" that mental illness, not anger or alcohol abuse, was his predominant problem. A lack of insight placed him at risk of stopping his medications and he did not "fully grasp" that alcohol abuse could also lead him to stop his medication and relapse. And appellant "could be potentially very dangerous"

and "[m]anifest violent behavior" if he resumed drinking. This record sufficiently supports a determination that appellant failed to show outpatient treatment would *more likely than not* be safe and effective.

But the preponderance standard of proof was too high a hurdle. To receive outpatient treatment, appellant needed only to demonstrate reasonable cause to believe—a strong suspicion in a person of ordinary prudence—that outpatient treatment would be safe and effective. Because the court expressly applied an elevated standard, the usual remedy would be reversal and remand for a new determination under the proper standard. (Cf. *Cooley, supra*, 29 Cal.4th at p. 260 [declining to independently review record under proper standard and remanding for further proceedings].)

 But we need not direct the court to hold a new hearing because, as the parties represented at oral argument, it has already done so and granted outpatient treatment to appellant. "As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions ' " ' "upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " ' [Citation.] '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' " (*Rish, supra*, 163 Cal.App.4th at p. 1380.) That is the case here. Appellant has already received the relief he seeks from us.

But appellant raises important procedural issues concerning section 2972 that are " ' "capable of repetition, yet evading review." ' " (*Rish, supra*, 163 Cal.App.4th at p. 1380 [reaching MDO Act procedural issues]; accord, *People v. Williams* (1999) 77 Cal.App.4th 436, 441, fn. 2 [92 Cal.Rptr.2d 1] [although appeal from expired MDO commitment order was "technically moot," court reached procedural issues that were "important and of continuing interest"].)

 When an issue "is one likely to recur while evading appellate review [citations] and involves a matter of public interest [citations]," we may "exercise[ our] discretion to decide the issue for the guidance of future proceedings before dismissing the case as moot." (*People v. Cheek* (2001) 25 Cal.4th 894, 897–898 [108 Cal.Rptr.2d 181, 24 P.3d 1204] [approving Court of Appeal disposition of moot SVPA case and announcing, "[w]e will do the same"].) We have decided the briefed issues and clarified the burden of proof, the standard of proof, and the standard of review for outpatient treatment determinations pursuant to section 2972, subdivision (d). What remains is to dismiss the appeal as moot.

## DISPOSITION

The appeal is dismissed.

O'Leary, Acting P. J., and Fybel, J., concurred.