Filed 10/27/15  P. v. Fletcher CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAM DOUG FLETCHER,<br><br>    Defendant and Appellant. | F070714<br><br>(Super. Ct. No. CF03901007)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In June 2014, the Fresno County District Attorney's office filed a petition to extend the treatment of appellant William Doug Fletcher as a mentally disordered offender (MDO) pursuant to Penal Code section 2970.[1]  Following a recommitment trial, a jury found true that appellant continued to be an MDO.  The trial court denied his request to be treated on an outpatient basis and he was ordered to undergo an additional year of treatment through the Department of State Hospitals.

Appellant raises three issues on appeal.  First, he contends there was insufficient evidence he was an MDO.  Second, he argues the trial court had a sua sponte duty, and failed, to instruct the jury concerning a "medication defense" as set forth in *People v. Noble* (2002) 100 Cal.App.4th 184 (*Noble*).  In the alternative, he asserts his trial counsel rendered ineffective assistance if it is deemed this issue was waived.  Finally, he maintains the trial court erred when it failed to place him into a conditional release program.

Appellant's arguments are without merit.  We affirm.

## FACTUAL BACKGROUND

### I.      Trial Testimony.

#### A.      Prosecution's case.

Robert Wagner, Ph.D., a forensic psychologist at Coalinga State Hospital, testified for the prosecution at the recommitment trial.  Wagner performed an MDO evaluation of appellant, who was diagnosed with two disorders, schizophrenia and pedophilia, along with a learning disability.  Appellant was taking two antipsychotic medications, Zyprexa and Navane.

Wagner interviewed appellant twice prior to his testimony, the first interview approximately five months before trial and the last approximately two weeks before trial.

---

[1]      All future statutory references are to the Penal Code unless otherwise noted.

He observed many signs that appellant's schizophrenia was under control with medication, which appellant was taking voluntarily. At the time of the first interview, appellant had been attending a group sex offender treatment program for the first time since 2006. By the second interview, however, he had stopped attending after the group leaders gave him a certificate that indicated he was doing well. Appellant believed he had "graduated" and no longer had to attend.

Wagner stated a single episode of molesting a prepubescent child is sufficient for diagnosis of pedophilic disorder if there is also evidence of ongoing fantasies and interests in children. He expanded on that definition and said the following supports a diagnosis of pedophiliac disorder: a person must express a sexual interest in prepubescent children which persists for at least six months in the form of fantasies or interest, the person is at least 16 years of age, and the person is at least five years older than the child. Wagner indicated the age of 13 was typically used as the cutoff to define prepubescent children, although he acknowledged the pubescent process in girls can start anywhere from 10 and a half to 15 years of age. Wagner used four incidents to diagnose appellant's pedophiliac disorder.

In 1995, appellant, who was 19 or 20 years old, followed and "kind of stalked" a girl for approximately two years when she was between 13 and 15 years old. There was no express sexual behavior, but the girl became nervous and a stay-away order was imposed. Unspecified criminal charges against appellant were dropped.

In 1996, appellant brought a five-year-old girl into his bedroom, exposed himself, and suggested or asked to have sex with her. The girl said no and he let her go. Either that same day or later that same week, appellant approached an 11-year-old girl in his apartment laundry room and asked, "Can I do you?" He was arrested and placed on probation. Appellant was required to register as a sex offender.

In 2003, appellant watched a 13-year-old girl who was waiting for the bus and he followed her home. The girl became nervous, and her brother punched appellant. The

3.

police were called and appellant later told a doctor he wanted to "get in" the girl's pants. Appellant went to state prison and then to Atascadero State Hospital.

Appellant told Wagner he knew these incidents were wrong and he would not do them again. He told Wagner he must stay away from children and avoid alcohol because he had a past history of alcohol abuse. Appellant acknowledged alcohol negatively affects his judgment. Wagner, however, was concerned appellant did not have a plan to avoid future incidents, such as identifying stressors and what to do with fantasies when they occur. These are goals stressed in group therapy.

Wagner spoke with appellant's past and current psychiatrists. Dr. Sandhu, the current treating psychiatrist, noted that appellant's schizophrenia symptoms were probably controlled as well as they could with current medications but Sandhu did not have further comment based on a lack of history with appellant. Dr. Ngo, the past psychiatrist, felt that appellant was "more or less at baseline" and he was "about as good as he can get." Ngo would not say appellant was in remission with his current medication regimen. Ngo indicated appellant has a "strong difficulty" with abstract thinking and word comprehension at times. Ngo did not feel appellant could develop more insight beyond his abilities at that time.

Wagner opined that appellant's pedophilic disorder was not in remission. Although appellant had not shown any symptoms of the disorder at the state hospital, Wagner believed institutional remission had occurred. Wagner acknowledged some confusion existed about the sexual offender treatment certificate, which caused appellant to quit group therapy. However, he believed appellant was "rigid" and said he did not need the therapy anymore. Wagner believed that was part of appellant's denial system, which made Wagner concerned that appellant was not ready to leave yet, did not understand what was being asked of him, and what he needed to do. Appellant had also promised his social worker he would start going to substance abuse treatment, but had not done so.

Wagner believed it would be ideal if appellant went to a "board-and-care situation" like CONREP, which is a conditional release program. Appellant, however, had rejected a proposal to go to CONREP and, instead, wanted to be released. Wagner's final opinion was that appellant met all of the criteria as a MDO. Appellant's schizophrenia, which involves disorganized thinking or impulsivity, could also influence behavior connected with pedophilic disorder.

On cross-examination, Wagner agreed he had observed appellant with disorganized thoughts, which was a negative symptom associated with schizophrenia. He agreed it was probably true that disorganized thinking was also a negative symptom for a developmental disability depending on where the brain was injured.

Wagner acknowledged it was unclear whether the girls from the 1995 and 2003 incidents were prepubescent given their ages. He also acknowledged there were no reports of appellant demonstrating or expressing sexual fantasies towards children during his time in the state hospital. He agreed appellant did not have verifiable incidents that lasted over a six-month period in the absence of the first and last incidents.

Wagner indicated he was not comfortable with appellant in a board and care facility without supervision, and 24-hour supervision would be the best for him. Wagner agreed that his diagnosis of pedophilia was based on the alleged incidents that took place prior to appellant's placement in the state hospital. He believed appellant would be dangerous if he was released, noting the previous victims appeared to be strangers and appellant's acts were ones of opportunity based on impulse.

### B. Defense case.

Appellant testified and said he would not take the sex offender's class again if he was told to do so. He had already taken it twice and did not want to go three times. If released from the hospital he would apply for SSI benefits and find an apartment. He would be interested in living in a board and care facility because it would keep him "out of trouble."

Appellant wanted to avoid contact with children because they "tend to set me up" and had lied in the past about him. When asked if he had any sexual interest in children, appellant stated, "No, I don't molest children no more." He said he felt sorry for what he did and had learned his lesson.

He acknowledged that his schizophrenia medication helps him and he takes it twice a day. However, he disagreed with the doctors' diagnosis that he suffered from schizophrenia and denied hearing any voices.

On cross-examination appellant stated he had "partial" sex with children and he believed the children wanted to participate, including the 11- and five- year-old victims. He denied ever hearing any voices even before he took medications.

## DISCUSSION

### I. Sufficient Evidence Established that Appellant was an MDO.

Appellant concedes there was substantial evidence to demonstrate he suffered from schizophrenia. He contends, however, there was insubstantial evidence to establish pedophilia, that his schizophrenia was not in remission, or that he was dangerous because of schizophrenia.

### A. Standard of review.

The MDO Act was enacted in 1985. It requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment until their mental disorder can be kept in remission. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061, disapproved on another point in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.) Commitment as an MDO is not indefinite. An MDO is committed for one-year periods and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year. (*Lopez, supra*, at p. 1063.)

A recommitment under the MDO law requires proof beyond a reasonable doubt that the patient has a severe mental disorder; the disorder is not in remission or cannot be

6.

kept in remission without treatment; and by reason of that disorder, the patient represents a substantial danger of physical harm to others. (§ 2970, subd. (b); *People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404.) The focus is on the defendant's current condition. (*People v. Cobb* (2010) 48 Cal.4th 243, 252.)

On appeal, we assess the sufficiency of the evidence to support an MDO commitment under the substantial evidence standard. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.) This requires us to determine, on the whole record, whether a rational trier of fact could have found that appellant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. The evidence must be reasonable, credible, and of solid value. It is the exclusive province of the trial judge, or jury, to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*Ibid*.)

A single opinion by a psychiatric expert that a person is currently dangerous due to a severe mental disorder can constitute substantial evidence to support the extension of a commitment. (See *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 [§ 1026.5 commitment].) "Expert opinion testimony constitutes substantial evidence only if based on conclusions or assumptions supported by evidence in the record. Opinion testimony which is conjectural or speculative 'cannot rise to the dignity of substantial evidence.'" (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

**B.**      **Analysis.**

A review of this record viewed in the light most favorable to the People establishes substantial evidence of proof beyond a reasonable doubt that the jury could find appellant was an MDO.

**1.**      **A severe mental disorder.**

Using CALCRIM No. 3457, the trial court defined "severe mental disorder" for the jury as "an illness or disease or condition that substantially impairs the person's

7.

thought, perception of reality, emotional process, or judgement or that grossly impairs his behavior or that demonstrates evidence of an acute brain syndrome for which prompt remission in the absence of treatment is unlikely. It does not include a personality or adjustment disorder or mental retardation or other developmental disabilities." Based on this record, the jury had substantial evidence to determine appellant suffered from two severe mental disorders.

Wagner diagnosed appellant with schizophrenia and pedophilic disorder. Wagner's opinion testimony stemmed from his two personal interviews with appellant, his personal discussion with appellant's past and current treating psychiatrists, his personal discussion with appellant's past social worker, a review of hospital records, and a review of police reports.

Appellant contends Wagner's testimony regarding the pedophilia diagnosis was legally insufficient because it was not clear whether the two teenaged victims were prepubescent or not. Without those two victims, appellant maintains the evidence does not demonstrate he had a sexual interest in prepubescent children that extended over a period of at least six months. Appellant asserts the law does not provide a definition of prepubescence for the purpose of a psychologist making a diagnosis of pedophilia. These contentions are unpersuasive.

Wagner informed the jury a single episode of molesting a prepubescent child was sufficient for a diagnosis of pedophilic disorder if the single incident was coupled with evidence of ongoing fantasies and interests in children. The jury learned that in 1996 appellant exposed himself to a five-year-old girl in his bedroom and appellant indicated he wanted to have sex with her. Appellant also approached an 11-year-old girl and said, "Can I do you?" These incidents lead to his arrest and conviction. The jury learned that in 1995 appellant followed and "kind of stalked" a girl for approximately two years starting when she was 13 years old. In 2003, he followed another 13-year-old girl from a bus stop.

8.

Wagner noted it was typical to use the age of 13 as the cutoff to determine prepubescence. Despite acknowledging that the two teenaged victims could have started or even finished puberty, he was still confident in his diagnosis because the two teenaged victims were at the "margin" coupled with appellant's interactions with the five-year-old and 11-year-old victims.

In his reply brief, appellant notes that the diagnostic criteria for pedophilic disorder under the DSM-V involves prepubescent children, who are classified generally as 13 years or younger. Wagner used that cutoff when rendering his medical diagnosis. His opinion of pedophilic disorder was not based on speculation, as appellant contends, but followed the DSM-V guidelines. Despite appellant's arguments to the contrary, Wagner did not base his medical pedophilic diagnosis without regard for the facts available to him. He was permitted to render his opinion based on matters known to him as a type that an expert may reasonably rely upon in forming an opinion relative to the subject of that testimony. (Evid. Code, § 801.) It was the jury's domain to determine whether Wagner's opinions were based on reliable information. (*Neumann v. Bishop* (1976) 59 Cal.App.3d 451, 463.) In rendering its finding, the jury indicated it found that Wagner's opinion was based on reliable information. Substantial evidence exists in this record for the jury to determine appellant suffered from both schizophrenia and pedophilic disorder.

### 2. Remission.

Using CALCRIM No. 3457, the trial court defined "remission" as "that the external signs and symptoms of the severe mental disorder are controlled by either psychotropic medication or psychosocial support. [¶] A severe mental disorder cannot be kept in remission without treatment if during the period of the year prior to the date this trial commenced, the person did not voluntarily follow the treatment plan. A person has voluntarily followed the treatment plan if he has acted as a reasonable person would in following the treatment plan."

9.

Appellant asserts his schizophrenic symptoms were under control with no significant symptoms observed in years following his voluntary ingestion of antipsychotic medications. He contends the prosecution failed to establish he "cannot be kept in remission without treatment" for schizophrenia because there is no requirement that his symptoms be completely eliminated.

The record demonstrates that the external signs and symptoms of appellant's schizophrenia appeared controlled by psychotropic medications. The jury, however, heard Wagner's opinion that appellant's pedophilic disorder was not in remission. Although appellant had not shown any symptoms of that disorder at the state hospital, Wagner believed institutional remission had occurred.

Appellant stopped attending the sexual offender group therapy and he told the jury he would not return even if told to do so. Wagner noted although there was some confusion about the sexual offender treatment certificate, which caused appellant to quit group therapy, appellant remained "rigid" and said he did not need that therapy anymore. Wagner believed that was part of appellant's denial system, which made Wagner concerned that appellant was not ready to leave yet, did not understand what was being asked of him, and what he needed to do.

Appellant told the jury he no longer molests children, and he engaged in "partial" sex with children. He informed the jury that the children, including the five-year-old victim, wanted to participate.

Based on this record, the jury could reasonably determine appellant lacked insight into his pedophiliac disorder and it was unreasonable for him to stop attending sex therapy class. This constituted substantial evidence for the jury to determine appellant's pedophilic disorder could not be kept in remission without continued treatment.

### 3. Physical harm to others.

Using CALCRIM No. 3457, the court instructed the jury that "[a] substantial danger of physical harm does not require proof of a recent overt act."

10.

Appellant argues the evidence does not establish he represented a substantial danger of physical harm to others. He contends Wagner's opinion shifted the burden of proof onto him regarding dangerousness because Wagner stated there was not "enough reassurance" that the pedophilic disorder was in remission. Appellant asserts he had a plan to stay away from children, and it is not clear that he can develop anything more sophisticated given his intellectual limitations. He maintains the state is effectively asserting he should spend the rest of his life at a state hospital if it finds he remains dangerous because of his limited ability to form a more sophisticated plan.

The jury heard that appellant had no comprehensive plan for avoiding a reoccurrence of improper encounters with minors. The goals stressed in group therapy would include identifying stressors and what to do with fantasies when they occur. Wagner believed appellant was not ready to leave and he opined appellant would be dangerous if he was released. Wagner informed the jury that appellant's schizophrenia, which involves disorganized thinking or impulsivity, would also influence behavior connected with pedophilic disorder. Wagner noted the victims appeared to be strangers to appellant, who acted on impulse when given the opportunity. In light of this evidence, along with appellant's current belief the children wanted to participate in the acts, a reasonable jury could determine that appellant continued to pose a substantial danger of physical harm to children.

Appellant concedes in his reply brief that there is sufficient evidence to establish his dangerousness if this court rejects his argument regarding the sufficiency of evidence for pedophilic disorder. Based on this record, substantial evidence existed that was reasonable, credible and of solid value for a jury to find true that appellant was an MDO beyond a reasonable doubt. (§ 2970, subd. (b); *People v. Burroughs, supra,* 131 Cal.App.4th at p. 1404; *People v. Clark, supra,* 82 Cal.App.4th at pp. 1082-1083.)

## II. The Trial Court Did Not Err in Failing to Give a "Medication Defense" Jury Instruction.

Appellant asserts the trial court had a sua sponte duty to instruct the jury regarding the so called "medication defense" set forth in *Noble, supra,* 100 Cal.App.4th 184. In the alternative, he contends his trial counsel rendered ineffective assistance to the extent this issue was forfeited.

In *Noble*, a jury extended the defendant's commitment as an MDO for one year pursuant to sections 2970 and 2972. (*Noble, supra,* 100 Cal.App.4th at p. 187.) The defendant's theory at the recommitment trial was that his mental disorder was controlled by medication and he would not present a danger to others if released because he would continue to take his medication. The trial court instructed the jury that the People had the burden of proving the elements necessary for an MDO extension beyond a reasonable doubt. The court, however, then undermined that instruction with CALJIC No. 4.15 (now renumbered CALJIC No. 4.17.1), which involves a "medication defense." Pursuant to that instruction, the jury was told the defendant had the burden to establish by a preponderance of the evidence the following two criteria: first, in his present medicated condition he no longer represented a substantial danger of inflicting physical harm upon others; and, second, he would continue to take his prescribed medications in an unsupervised environment. (*Noble, supra,* 100 Cal.App.4th at p. 189.) *Noble* held this jury instruction was in error because the defendant was not raising an affirmative defense, which generally presents new matter to excuse or justify conduct that would otherwise cause liability. (*Ibid.*) Instead, because this was a defense to negate an essential element of the charges, the burden of persuasion could not be placed on the defendant. (*Ibid.*)

In dicta, *Noble* stated that when an MDO defends against an extension petition on the theory that he or she is not dangerous to others while medicated, the trial court should give the following instruction: "The People have the burden to prove, beyond a reasonable doubt, that if released, the defendant will not take his or her prescribed

12.

medication and in an unmedicated state, the defendant represents a substantial danger of physical harm to others." (*Noble, supra,* 100 Cal.App.4th at p. 190.)

## A. The trial court had no sua sponte duty to give such an instruction.

Appellant contends the trial court had a sua sponte obligation to give this jury instruction taken from the dicta in *Noble*. We disagree.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case. [Citation.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) A trial court has a sua sponte duty to instruct on a particular defense only if it appears the defendant is relying on that defense, or if substantial evidence supports such a defense and it is not inconsistent with the defendant's theory of the case. (*Ibid.*)

In contrast, a "pinpoint" jury instruction relates particular facts to a legal issue in a case or it pinpoints the crux of the defendant's case. (*People v. Rogers* (2006) 39 Cal.4th 826, 878; *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) A trial court has no sua sponte duty to give a pinpoint jury instruction absent a request. (*People v. Rogers, supra,* at p. 878.)

Here, the "medication defense" pinpoints the crux of appellant's case or it ties particular facts in the case to a legal issue. Thus, it was a pinpoint instruction for which a trial court has no sua sponte duty to give absent a request. (See *People v. Rogers, supra,* 39 Cal.4th at p. 878.) Defense counsel failed to make such a request. Accordingly, the trial court did not err.

## B. Appellant cannot establish ineffective assistance of counsel.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).) When such a claim is made on direct appeal, unless there can be no satisfactory explanation, the conviction must be affirmed if the record does not show the

13.

reason for counsel's challenged actions or omissions. Even when deficient performance is present, the defendant must establish it is reasonably probable the outcome would have been different but for counsel's unprofessional errors. (*Ibid.*) "'''"A reasonable probability is a probability sufficient to undermine confidence in the outcome."''' [Citations.]" (*Ibid.*)

Here, this record demonstrates that defense counsel appeared to have had sound tactical strategy for not requesting the proposed jury instruction set forth in dicta in *Noble*. It was not a defense theory that appellant's disorders were under control with medication. Instead, during closing arguments, defense counsel attempted to establish that appellant had mental retardation and did not suffer from either schizophrenia or pedophilia. It was argued that Wagner's diagnoses were incorrect and all of appellant's symptoms could be explained by his mental retardation caused by organic brain damage. Defense counsel argued appellant's condition had remained the same over time despite changes in his medication, noting that could indicate an organic injury. The jury was urged to reject Wagner's conclusions, arguing appellant's treatment had not worked because appellant was not schizophrenic. The jury was also urged to reject the pedophilic diagnosis, asserting the evidence was insufficient to support Wagner's position. Counsel emphasized that appellant had never expressed any interest in prepubescent children in the last 10 years, appellant knew he should stay away from children and he would report as a sex offender if he was released. Defense counsel argued it was not clear from Wagner's testimony what comprised appellant's treatment plan, and it was reasonable for appellant to believe he no longer had to attend the group therapy in light of the certificate and his limited mentality.

Despite appellant's argument to the contrary, a "medication defense" jury instruction would have been inconsistent with the defense theory that appellant did not have any disorders requiring medication. In light of defense counsel's closing arguments, appellant cannot show there is no satisfactory explanation for his counsel's actions or

14.

omissions. Thus, appellant cannot maintain a claim of ineffective assistance of counsel. (*Anderson, supra,* 25 Cal.4th at p. 569.)

### III. The Trial Court Did Not Err in Denying Conditional Release.

Appellant contends the trial court erred in failing to place him into a conditional release program, arguing the court failed to recognize the relatively low burden of proof placed upon him to establish his suitability for conditional release. He also maintains the court made unreasonable and impermissible credibility determinations. He urges this court to reverse the judgment of the lower court and order him placed into the conditional release program.

#### A. Background.

Prior to trial, appellant requested a conditional release pursuant to section 2972, subdivision (d), if he was recommitted as an MDO. After the trial evidence concluded, appellant presented a witness regarding his suitability for conditional release.

##### 1. Mark Duarte's testimony.

Mark Duarte testified for the defense. Duarte, a licensed clinical social worker, was the community program director for the Fresno Regional CONREP from 1987 through 2012. As the director he was a liaison to the courts, state hospitals, and other local agencies. He was responsible for the daily operations of CONREP, prepared reports for court, and testified in court. He rendered opinions regarding the suitability of placement for candidates, provided direct treatment of candidates, and supervised such treatments.

Duarte interviewed appellant prior to his testimony. He also reviewed four hospital reports, two letters from psychologists, and several police reports. Duarte believed appellant could be safely and effectively treated in the community. He found appellant to be "directable" and cooperative. He did not see any signs of hallucination or inappropriate behavior during their 45-minute interview together. Duarte did not see any

15.

evidence of property damage or physically inappropriate behavior from appellant in the past approximate 10 years.

According to Duarte, if appellant were placed on outpatient treatment he would receive treatment and supervision guidelines, which would require him to follow a prescribed regimen, stay in treatment, and stay in contact for treatment. Any violation could result in a return to the hospital. When a person is an outpatient they have almost daily contact with someone from CONREP. Appellant would be seen by a psychiatrist, a psychologist, and a licensed clinical social worker. He would be prescribed medications as needed. He could stay with CONREP forever if he continued to follow the rules. Duarte believed appellant would likely need assistance his entire life.

Duarte was not concerned that appellant was a registered sex offender because he believed the police reports showed appellant was a very low risk offender. Duarte believed it would be adequate to place appellant in a licensed residential care facility with a 24-hour onsite staff and case manager or clinician who could be contacted immediately if appellant was away without permission or unsupervised. Such facilities are located in Fresno County. CONREP had the ability to place appellant in such a facility, which could occur in approximately 30 days.

Duarte did not believe appellant was likely to reoffend while in the treatment and with supervision. Appellant would undergo frequent random testing for illicit substances. He would face immediate revocation if he refused to report to the program, refused a toxicology screen, or refused to take his medications. Duarte believed an outpatient program would find an appropriate treatment plan for appellant, who would comply. If appellant was released to CONREP it would be obligated to find appropriate placement for appellant.

On cross-examination Duarte agreed it had been two and a half years since he had worked for CONREP. He indicated he still knew what was occurring at CONREP because he currently worked as the forensic clinician for Madera County and had

16.

contacts with other community program directors. Duarte believed appellant suffered from mental retardation and not true schizophrenia. He disagreed with the past diagnosis of acute schizophrenia, believing appellant was misdiagnosed a long time ago, and the incorrect diagnosis had been copied repeatedly over time. After 10 years of treatment in a state hospital, Duarte believed someone would have made significant progress with a mental illness regarding his behavioral functioning, but appellant's behavioral functioning was still baseline. In contrast, a developmental disability does not change and is constant. He believed appellant had a developmental disability. He agreed that appellant suffered from pedophilia but would classify it as a "fixed type" and not "mixed" because appellant had only exhibited interest in females.

Duarte believed appellant's failure to continue the sex offender group therapy supported his diagnosis of a developmental disability and not mental illness. According to Duarte, appellant decided not to return because it would not give him any more value and there was nothing more to learn. Duarte did not think this made appellant dangerous. He believed appellant operated at the level of a six to eight year old, but he had learned to control his impulses and he attended to people who were in authority.

Duarte agreed that it was dangerous when appellant committed his underlying offense, bringing a five-year-old girl into his room, kissing her, lying her down on his bed, and exposing his penis to her. Duarte believed appellant would act out inappropriately if he was put on the streets without supervision but he did not believe appellant would act out dangerously. He noted appellant might say inappropriate things to children, but he was not prone to kidnapping or violent behavior.

### 2. The trial court's ruling.

After Duarte concluded his testimony, the parties argued the matter. At the conclusion of argument, the trial court noted it had reviewed and considered *People v. Gregerson* (2011) 202 Cal.App.4th 306 (*Gregerson*) and *People v. Rish* (2008) 163 Cal.App.4th 1370, and would follow those two cases as guidelines. The court found it

17.

significant that during the trial Wagner testified appellant did not want to go into CONREP. As a result, no interview occurred with appellant regarding whether CONREP was a viable option. The court also noted it had received a letter from CONREP dated November 7, 2014, which the parties agreed could be admitted into evidence, and it was made part of the record.

According to CONREP's letter, it last met with appellant on October 7, 2014, a little over two months before Duarte's testimony and the court's ruling. At that time, appellant refused to meet with CONREP to participate in the community outpatient treatment readiness interview because he wanted to eat at the patient restaurant. The trial court found it significant that appellant refused to participate in the readiness interview. The court also commented that, although Duarte had some experience with CONREP, it did not appear Duarte had knowledge, and he did not testify, regarding CONREP's current resources. The court also noted Duarte never testified regarding appellant's desire to participate in CONREP. The court believed it made a difference that appellant had given no clear statement he wanted to participate in the program or that he had participated in any type of treatment readiness interview.

Defense counsel argued the interview was a cursory attempt to speak with appellant, who did not understand what was required of him to attend CONREP. The defense contended appellant's basic understanding of how he lives his daily life did not change whether he could be safely or effectively treated in the community.

The court noted appellant had not fully demonstrated an ability or willingness to follow through with his prepared treatment plan, including the sex treatment. The court understood, based on Wagner's testimony, that appellant lacked insight into his own mental illness. The court noted the disagreement in opinion testimony between Wagner and Duarte, and it found Wagner's testimony to be more persuasive than Duarte's testimony as to the schizophrenia diagnosis, as well as whether appellant could be safely

and effectively treated on an outpatient basis.  The court found appellant failed to provide sufficient evidence and it denied outpatient treatment.

**B.      Standard of review.**

Section 2972, subdivision (d), provides an opportunity for continued MDO treatment on outpatient status where, as here, the trial court sustains a petition under section 2970 for continued treatment of an MDO.  (*People v. Rish, supra,* 163 Cal.App.4th at pp. 1383-1384.)  The person "shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."  (§ 2972, subd. (d).)

Under section 2792, subdivision (d), the patient bears the burden of showing his suitability for outpatient treatment.  (*Gregerson, supra,* 202 Cal.App.4th at p. 316.)  To meet this burden, "the patient must raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective."  (*Id.* at p. 319, fn. omitted.)  A trial court's ruling regarding placement in an outpatient program must be based on evidence.  (*Id.* at p. 320.)  "Accordingly, if the court grants outpatient treatment, its order will be affirmed if substantial evidence shows reasonable cause existed to believe outpatient treatment would be safe and effective.  If the court denies outpatient treatment, its order will be affirmed if substantial evidence shows there was no such reasonable cause.  In any event, if substantial evidence does not support the court's order, it must be reversed."  (*Ibid.*)

**C.      Analysis.**

In denying outpatient placement, the trial court relied, in part, on *Gregerson, supra,* 202 Cal.App.4th 306.  In *Gregerson*, the defendant was an involuntarily committed MDO who appealed from an order declining to place him in outpatient treatment pursuant to section 2972, subdivision (d).  He asserted the trial court wrongly placed the burden of proof on him and wrongly required him to show the appropriateness of outpatient treatment by a preponderance of the evidence.  The *Gregerson* court held

19.

the patient bears the burden of proof on this issue and the standard of proof is "'reasonable cause'" and not a "preponderance of the evidence." (*Gregerson, supra,* at p. 310.) In determining the standard of proof, *Gregerson* looked first to the plain language of section 2972, subdivision (d), which expressly requires the patient to demonstrate "'reasonable cause'" that he or she "'can be safely and effectively treated on an outpatient basis.'" (*Gregerson, supra,* at p. 317.)

In his opening brief, appellant contends *Gregerson* imposed too great a burden on appeal for an MDO patient to show the trial court erred. However, in his reply brief, appellant contends the trial court failed to follow *Gregerson*, contending the probable cause standard at a preliminary hearing and the reasonable cause standard for a hearing under section 2972, subdivision (d), are the same.

Here, appellant expressed a belief that the children, including the five-year-old victim, wanted to participate in the past acts that lead to his criminal convictions. Appellant also testified that children "tend to set me up" and they had lied in the past. He failed to complete the sex offender treatment program despite the rigid structure in place at the state hospital. He continues to show a lack of insight into his pedophilia. As Wagner noted, appellant's past crimes were impulsive acts of opportunity involving minor children who were strangers to him. Based on this record, substantial evidence establishes there is reasonable cause to believe outpatient treatment would not be safe and effective. (*Gregerson, supra,* 202 Cal.App.4th at p. 320.)

Appellant, however, argues a trial court at a probable cause hearing has a very limited ability to weigh the evidence and substitute its own personal beliefs for that of a reasonable person. He points to *Cooley v. Superior Court* (2002) 29 Cal.4th 228 (*Cooley*) and contends the trial court overstepped its bounds and resolved credibility disputes between the experts in a way that was not appropriate. He objects to the trial court's determination that Wagner was more credible than Duarte, contending nothing in the record permitted the trial court to reject Duarte's testimony. He asserts that "if the

trial judge had understood that [she] was doing a preliminary hearing, [she] would have undoubtedly found that appellant had presented enough evidence to justify a full-fledged hearing. However, because the trial court knew it was holding the final hearing, it applied a higher standard of proof to deny appellant the release."

Appellant also claims it is "ridiculous" for the trial court to determine he did not want to be in the outpatient program. He argues the request for outpatient placement was initiated by his counsel and it is reasonable to infer that, at least at the time of trial, he wanted outpatient placement. On the other hand, he also contends he cannot be forced into outpatient treatment and he can change his mind later. He also asserts his failure to comply with the sex offender treatment program and his lack of insight into his mental illness is a result of his developmental disabilities, which will never change. He argues his mental retardation should not be the primary reason for keeping him locked in the state hospital and Duarte's testimony established a program could be developed to accommodate him.

Appellant's arguments are without merit. In determining the burden of proof, *Gregerson* took guidance from *Cooley, supra,* 29 Cal.4th 228, which analyzed the correct burden of proof at a hearing under the Sexually Violent Predators Act (SVPA). *Cooley* examined Welfare and Institutions Code section 6602, which provides a screening process ultimately resulting in a probable cause hearing conducted before the superior court to determine if an offender released from prison should be detained in a secure facility until a trial is completed to determine whether the person is a sexually violent predator. The trial is the last stage of a complex administrative and judicial process. Under the SVPA, the hearing before the superior court involves a "probable cause" standard to hold the person pending trial. (*Cooley, supra,* 29 Cal.4th at p. 245.) The *Cooley* defendant argued on appeal that standard was too stringent for a "civil" proceeding and he urged the Supreme Court to determine a preponderance of the evidence standard should apply. *Cooley* rejected that argument and held the probable

cause standard was appropriate because the Legislature specifically specified the burden of proof. (*Id.* at pp. 250-251.) *Cooley* held that "a determination of probable cause by a superior court judge under the SVPA entails a decision whether a reasonable person could entertain a strong suspicion that the offender is [a sexually violent predator]." (*Id.* at p. 252, italics omitted.)

Under the SVPA, a hearing under Welfare and Institutions Code section 6602 is analogous to a preliminary hearing in a criminal case as both are designed to eliminate groundless or unsupported charges and avoid a needless trial. (*Cooley, supra,* 29 Cal.4th at p. 247.) In a probable cause hearing, the trial court may weigh the evidence, resolve conflicts, and judge or withhold credibility to a particular witness, including an expert. (*Id.* at p. 257.) *Cooley* cautioned, however, that at the probable cause stage, the trial court should not find an absence of probable cause just because it finds the defense witnesses slightly more persuasive than the prosecution witnesses. (*Id.* at pp. 257-258.) Instead, to reject the prosecution evidence at the probable cause stage, the evidence presented must be inherently implausible, the witnesses must be conclusively impeached, or the witnesses' demeanor so poor that no reasonable person would find them credible. The trial court may not substitute its own personal beliefs as the ultimate determination to be made at the trial. (*Id.* at p. 258.)

However, the hearing under section 2972, subdivision (d), is not a precursor to a future hearing or trial. The hearing under section 2972, subdivision (d), is not designed to test the sufficiency of the evidence similar to the hearing in *Cooley*. Instead, section 2972, subdivision (d), places the authority in the trial court, and not some future finder of fact, to determine whether there is reasonable cause to believe appellant can be safely and effectively treated on an outpatient basis. *Cooley* is procedurally distinguishable from the present matter and does not establish error by the trial court.

22.

Based on this record, we conclude the court could reasonably find that appellant had not met his burden of showing that he was entitled to outpatient release under section 2972, subdivision (d).

## **DISPOSITION**

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
PEÑA, J.