Filed 9/9/24  P. v. Hernandez CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA HERNANDEZ,<br><br>    Defendant and Appellant. | A169386<br><br>(Humboldt County<br>Super. Ct. No. CR040354S) |

Following a jury finding that defendant and appellant Joshua Hernandez (appellant) was an offender with a mental health disorder (OMD) subject to continued commitment under Penal Code section 2972,[1] the trial court denied appellant's request for outpatient treatment.  Appellant argues insufficient evidence supports the trial court's determination there was no reasonable cause to believe outpatient treatment would be safe and effective.  We affirm.

BACKGROUND

In 2005, appellant was convicted of three counts of attempted murder (§§ 187, subd. (a), 664), five counts of assault with a deadly weapon (§ 245, subd. (a)(1)), one count of first degree burglary (§§ 459, 460, subd. (a)), one count of infliction of unjustifiable physical pain or mental suffering on a child

_____

[1] All undesignated section references are to the Penal Code.

1

(§ 273a, subd. (a)), and one count of second degree burglary (§§ 459, 460, subd. (b)).[2]  Appellant was sentenced to 22 years in prison.

Appellant was admitted to the Department of State Hospitals in December 2021.  In August 2023, the Humboldt County District Attorney filed a petition to extend appellant's commitment.  In December 2023, following a jury trial, appellant was found to be subject to continued commitment as an OMD under section 2972.  The trial court denied appellant's motion for outpatient treatment under the conditional release program (CONREP) and extended his commitment for one year.  The present appeal followed.

DISCUSSION

I.    *Applicable Law*

Section 2970 authorizes a petition to extend the commitment of an OMD when the person "has a severe mental disorder, that . . . is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of the person's severe mental disorder, the [person] represents a substantial danger of physical harm to others."  (§ 2970, subd. (b).)  If the petition is found true, section 2972 mandates a one-year extension of the commitment.  (§ 2972, subd. (c).)  Regarding outpatient treatment, section 2972, subdivision (d), provides: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."  A person seeking outpatient treatment bears the burden of proof.  (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 316 (*Gregerson*).)  "Thus, to obtain outpatient treatment, the patient must raise a

---

[2] It is unnecessary to summarize the facts of the underlying offenses to resolve the present appeal.

2

strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective." (*Id.* at p. 319.) The patient "need not meet 'the higher burden' [citation] set by the preponderance standard of showing it is more likely than not that outpatient treatment would be safe and effective." (*Ibid.*) "If the [trial] court denies outpatient treatment, its order will be affirmed if substantial evidence shows there was no such reasonable cause." (*Id.* at p. 320.)

II.     *Summary of the Evidence*

Dr. Rebecca Aponte, a forensic psychologist, testified at the trial resulting in extension of appellant's commitment and denial of his motion for outpatient treatment. Dr. Aponte met appellant in September 2022, when she evaluated him for a Board of Parole hearing. Appellant had been diagnosed with schizophrenia with symptoms including auditory and visual hallucinations, delusions, disorganized thought process, and disorganized behavior. Following that evaluation, Dr. Aponte testified before the Board of Parole that she believed appellant met the criteria for continued commitment. Thereafter, appellant refused to meet with her. He also stopped speaking to most of his treatment team.

In their September 2022 meeting, appellant told Dr. Aponte that the medication he was taking was helpful to his mental health, but he complained of side effects. The doctor opined that appellant's condition was not "completely in remission" because he appeared guarded, his thought process was disjointed, and "[a]t times it was difficult to follow what he was saying." Appellant said he was not having hallucinations at that time. Dr. Aponte was aware from appellant's medical record that he had blinded himself by removing his own eyes. Appellant said it happened when he was in prison and was having hallucinations, but otherwise he did not want to

3

discuss the matter. Appellant did state that he had previously had "command hallucinations about self harm."

In her December 2023 testimony, Dr. Aponte opined that appellant's condition was still not in remission. She based that opinion on his behavior in the September 2022 interview; the circumstance that appellant's medications had not changed since that time; and appellant's refusal to meet with her or his treatment providers, which indicated "likely continued paranoia." Furthermore, although appellant continued to take his medication, he was unwilling (because of the side effects) to follow his psychiatrist's advice to increase the prescribed amount. Also, although appellant was attending the "psychosocial treatment groups" to which he had been assigned, he did "not participate in any discussions about mental health." Dr. Aponte explained her concerns as follows: "The fact that he . . . declined to participate actively in groups or to accept medication increases or to speak with his treatment team members indicates that he doesn't fully understand how impaired he is by his condition and the substantial risk to himself and to other people that he can pose because of his symptoms."

Although appellant denied any plan to discontinue his medication, Dr. Aponte testified it was "very common" for patients who regularly take medication in a confined setting to stop doing so when no longer subject to the same level of monitoring. She explained that patients released on the CONREP program need to get to psychiatric appointments and group sessions, pick up medication, and remember to take their medication. Dr. Aponte was concerned that, in light of appellant's refusal to actively participate in treatment at the hospital and his complaints about medication side effects, he might "take less of his medication, skip doses or potentially stop taking his medication if he's not under tight monitoring in a controlled

4

environment." The doctor was also concerned that, in the September 2022 interview, appellant "frequently attributed his symptoms to his belief that he had been poisoned." She explained that appellant would be more likely to stop or reduce his medication if he did not really think he had schizophrenia. Although appellant did acknowledge having a mental illness, Dr. Aponte characterized his overall insight as "partial." Furthermore, appellant attributed some of his "past psychosis" at the time of the underlying offenses to marijuana use, but he also "discussed potentially using marijuana again in the future." Dr. Aponte explained that, "[f]or individuals who have a psychotic disorder, [marijuana use] can exacerbate symptoms, particularly hallucinations, and it can lead to exacerbated instability."

On cross-examination, Dr. Aponte agreed that, since appellant's 2021 admission to the hospital, he had not been violent, had not made threats, and had not damaged any property. She also agreed appellant acknowledged he has a mental illness and needs medication. Finally, she admitted it was "possible" that appellant's appropriate behavior could continue "if" he remained on medication and off controlled substances during outpatient treatment.

Dr. Aponte opined that appellant presented "a substantial risk of danger to others" "based on his history of violence associated with his mental illness, as well as his remission status, his apparent level of insight, his history of substance use and his discharge plan." After the jury returned its verdict, appellant's counsel moved for outpatient treatment. The court denied the request, stating, "Based upon the evidence presented in our trial, specifically the testimony of Dr. Rebecca Aponte, I find that it would be premature to at this time order outpatient treatment for [appellant] through CONREP."

5

III.   *Analysis*

Appellant argues that, "[b]ased just on the lack of violence, voluntary medication compliance, and stable condition, there was substantial evidence to raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective for appellant." But Dr. Aponte's testimony supports the trial court's finding to the contrary. As explained above, the doctor testified that appellant's condition was not fully in remission, that he had only partial insight into his illness, that he refused a recommended increase in his medication, that he raised the possibility of future use of marijuana, and that he was not participating in therapy. She also explained why outpatient treatment presented a risk of non-compliance with medication, especially in the circumstances of appellant's case. Although appellant was non-violent and compliant with his medication regime while in the hospital, appellant points to no evidence in the record addressing any of the concerns identified by Dr. Aponte. Among other things, appellant's refusal to communicate with Dr. Aponte and his treatment providers leaves the record absent of any evidence from which a reasonable person could conclude Dr. Aponte's concerns are unfounded.

Substantial evidence supports the trial court's conclusion that appellant failed to show reasonable cause that outpatient treatment would be safe and effective. (*Gregerson*, *supra*, 202 Cal.App.4th at p. 320.)

## DISPOSITION

The trial court's orders are affirmed.

6

                                        SIMONS, Acting P.J.


We concur.


BURNS, J.
CHOU, J.












(A169386)