Filed 3/4/26  P. v. Law CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085189 |
| v. | (Super.Ct.No. RIF100589) |
| TERRELL LAW, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samah Shouka, Judge. Reversed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Terrell Law petitioned the trial court for resentencing under the changes to the felony murder laws (Pen. Code, § 1172.6),[1] and the trial court denied his petition. Among other contentions, defendant asserts the trial court erred by applying an incorrect definition of reckless indifference. We reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

#### A.    DEFENDANT'S CRIMES

In May 2001, four men shared a four-bedroom house: Randy Craig (Craig), Johnny Anderson (Anderson), Jose Ramirez (Ramirez), and Nathan Deutsch (the victim). The victim sold marijuana. The victim kept cash and marijuana in a safe in his bedroom closet. Defendant and Brett May (codefendant) were twice at the men's house with a friend, who purchased marijuana from the victim.

Approximately one week before April 30, 2001, defendant and codefendant (collectively, defendants) had a conversation about stealing the victim's marijuana. Defendants planned to restrain the men at the house using duct tape, steal the marijuana, and sell it to get "some quick money." Codefendant needed money to give to his friend, Wendy O'Connor (O'Connor), because he had borrowed her car and crashed it, rendering it inoperable. There was no mention of using firearms; however, codefendant owned two guns: an assault rifle and a handgun.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

On the night of April 30, 2001, the four men at the house played video games, drank beer, and went to sleep around 10:30 p.m. Craig left for work around 3:00 a.m. on May 1, 2001.

Ramirez was asleep on the couch in the living room when he awoke, in the early hours of May 1, 2001, to defendant, in a mask, saying, " 'Wake your punk ass up.' " Defendant was holding codefendant's assault rifle, which appeared to be "like a Tec-9 of some sort, type—automatic type weapon." Defendant cocked or racked the rifle. Defendants forgot the duct tape in their vehicle but proceeded without it.

Defendant instructed Ramirez, " 'Get your ass on the ground.' " Ramirez moved to his knees and then lay on the ground. Defendant instructed Ramirez to remove his jewelry. Ramirez did not respond. Defendant struck Ramirez's back with the butt of the rifle. Defendant again instructed Ramirez, " 'Take off your jewelry.' " Ramirez removed his necklace and ring and handed them to defendant.

Ramirez could hear the victim in the victim's bedroom saying, " 'What the hell? . . . What's going on?' " The victim had a nine-millimeter handgun, which he kept loaded—"it always had a clip in it." Codefendant took the victim's gun.

Codefendant, carrying his handgun in one hand and the victim's handgun in his other hand, brought the victim into the living room and instructed him to lay on the floor, which the victim did. Defendant watched over Ramirez and the victim, while codefendant left the living room to search the house.

3

Codefendant returned to the living room excited, and said to the victim, " 'You going to come open this safe motherfucker.' " Codefendant cocked one of his handguns. Codefendant pointed a gun at the victim and walked behind him toward the safe, which was in the victim's bedroom.

Defendant initially stayed by Ramirez but then walked to the victim's bedroom. Codefendant repeatedly told the victim to open the safe. The victim said, " 'I can't. . . . I don't'—'I can't. I can't open it for you.' "

Defendant returned to the living room, directed Ramirez toward the safe, and instructed him to " 'open the motherfucking safe.' " Ramirez said, " 'I can't open the safe for you. It's not my safe.' " Defendant replied, " 'You're going to open the safe.' " Ramirez responded, " 'I told you, I can't open it.' " Defendant ordered Ramirez to " '[g]et your ass on the ground.' " Ramirez complied.

Codefendant repeatedly pistol-whipped the victim. The victim "took the hits." After one of the hits, the victim said, " 'Ow. That really hurt me this time. Stop hitting me.' "

The victim was moved to Anderson's bedroom. Anderson awoke to the victim saying, in a scared voice, " '[T]hese mother F'ers are tripping, dude." As Anderson became alert to his surroundings, he saw codefendant with two handguns.

Anderson testified that he witnessed the following: Codefendant reached up to pistol-whip the victim's head. "[The victim] reached his arm up and he blocked the gun. And the gun fell out of [codefendant's] hand." Codefendant "was so mad, he got

4

up and he was just, like, cussing. And he was coming at him . . . , and—boom. [The gun] just went off."

When asked what exactly codefendant said to the victim, Anderson testified, "I can't say word for word exactly what he said. I don't want to be up here guessing on anything. But I know that he was very mad when that happened. He picked up his gun, and he was just going off. And—boom—the gun went off." The handgun that fired may have been the victim's gun.

Defendant was in the doorway to Anderson's room, holding his gun in the direction of Anderson. During Anderson's testimony, he was asked if defendant was "the guy in the background sort of just holding this rifle and not doing any talking?" Anderson replied, "Exactly." When discussing "the guy with the two pistols," i.e., codefendant, Anderson was asked if that was "[t]he guy that actually did the shooting?" Anderson responded, "Exactly."

Immediately after being shot, the victim's body "fell forward lifeless." The victim suffered a gunshot wound to his head. Due to the bullet striking the victim's brain stem, there was no chance of the victim surviving the injury.

When the victim was killed, one of the armed men said, " 'Oh, shit.' " Defendant and codefendant ran out of the house. Anderson jumped out of his bedroom window and ran to a neighbor's house for help. The neighbor let Anderson into his house and called 911. Police found bullet fragments in a wall but did not have them analyzed.

Codefendant threw the firearms into a river. In the hours after the killing, defendants went to the home of their friend, O'Connor. Defendant was "pacing back and forth." O'Connor asked defendant and codefendant, " 'What's wrong with you?' " "He said, 'I shot him.' " [Defendant] . . . was still pacing around. And he just kept on saying, 'I shot him.' " In telling O'Connor what happened, defendants said that "[defendant] had the gun. And when he came into the bedroom where [codefendant] had the victim, [defendant] turned accidentally and the gun went off. And [codefendant] said that he shot him in the neck." When O'Connor was asked clarifying questions about her testimony, she said codefendant told her that defendant shot the victim in the neck.

At another time, codefendant told the mother of his child that he and defendant "went in to rob [the victim] and that [defendant] got nervous, and he accidentally pulled the trigger."

B.      2006: TRIAL

1.      *CLOSING ARGUMENT*

In closing arguments during trial, the prosecutor argued that after the victim blocked the pistol-whipping with his arm and a gun fell to the floor, codefendant "picks it up, goes off, he is telling him—he is upset. He is angry. And the gun does go off."

The prosecutor continued, "You may be thinking, well, it doesn't sound like [codefendant] is actually the one that pulled the trigger. After all, we heard [O'Connor]. And [defendant] is saying, 'I shot him, I shot him.' We heard some evidence that tends to—that shows [defendant] is really the guy that pulled the trigger."

The prosecutor argued, "Who pulled the trigger doesn't matter . . . . If you find . . . [codefendant]—was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer. Or an aider and abetter or co-conspirator, he's still accountable and responsible under that special circumstance allegation that it happened during the commission of a robbery, with reckless indifference to human life."

As the prosecutor's argument progressed, he argued, "Count 1, obviously the murder. [Codefendant], I submit to you, is responsible for it . . . as an aider and abettor. . . . [W]hether or not he's the one that pulled the trigger is not the dispositive issue. . . . He, as an aider and abettor, was very much involved in the commission of that crime." The prosecutor continued, "The evidence doesn't show that this was an intentional killing. It doesn't show it. That's fine. But, nevertheless, they go in there with guns. They go in there with guns that are actually loaded. . . . So not only are they aiding and abetting in the commission of those crimes like the robbery, but they are just as guilty if those guns go off or during the process somebody gets killed."

### 2. *JURY INSTRUCTION, JURY VERDICTS, AND SENTENCE*

For the special circumstance that the murder was committed during the attempted robbery (§ 190.2, subd. (a)(17)(A)), the trial court instructed the jury that it could find the allegation true (1) if it found defendant was the actual killer, or (2) if it found defendant was not the actual killer, then (a) if defendant aided and abetted the robbery with intent to kill, or (b) if defendant acted "with reckless indifference to human life and as a major participant aided, abetted, counseled, commanded, induced, solicited,

7

requested, or assisted in the commission of the crime of robbery which resulted in the death of a human being, namely [the victim]. [¶] A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being."

The jury found the special circumstance allegation true. The special circumstance verdict form did not include a finding as to whether defendant (a) was the actual killer, (b) aided and abetted with intent to kill, or (c) aided and abetted as a major participant acting with reckless indifference. Instead, the verdict form reads: "We, the jury . . . find that the murder of [the victim] . . . was committed while the defendant . . . was engaged in . . . the crime of robbery . . . as alleged in the allegation of special circumstance, within the meaning of . . . section 190.2, subdivision (a), subsection (17), subparagraph (A)." (All caps. omitted.)

The jury found defendant guilty of first degree murder (§ 187, subd. (a)), first degree robbery of Ramirez (§ 211), attempted first degree robbery of the victim (§§ 211, 664), and assault with a firearm against Anderson and Ramirez. (§ 245, subd. (a)(2).) The jury found true the allegations that defendant knew codefendant was personally armed with a handgun during the robbery and attempted robbery (§ 12022, subd. (a)(1)).

The jury found that defendant "did *not* personally and intentionally discharge a firearm" proximately causing the victim's death. (Italics added.) (§ 12022.53, subd. (d).) The jury found defendant "did *not* personally use a firearm" when robbing

8

Ramirez and attempting to rob the victim.[2] (Italics added.) (§ 12022.53, subd. (b).) Further, the jury found defendant "did *not* personally use a firearm" during the assaults with a firearm on Anderson and Ramirez.[3] (Italics added.) (§ 12022.5, subd. (a)(1).)

The trial court sentenced defendant to prison for a determinate term of six years, and a consecutive indeterminate term of life without the possibility of parole.[4]

### C.    2008:  APPEAL FROM THE JUDGMENT OF CONVICTION

Defendant appealed from the judgment of conviction, and this court affirmed. (*People v. May et al.* (Sep. 5, 2008, E041967) [nonpub opn.] [2008 WL 4099017].)[5] On appeal, defendant asserted the trial court erred by allowing the mother of codefendant's child to testify to the hearsay statement that codefendant said defendant accidentally shot the victim. (*Id.* at *5.) This court found the trial court did not err, but explained that if it did, then the error was not prejudicial. (*Id.* at p. *7.)

---

[2] The jury was instructed that a " 'firearm' need not be operable," and "[t]he term 'personally used a firearm,' as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it." (CALJIC No. 17.19.)

[3] The jury was instructed on aiding and abetting, so it may have found defendant guilty of assault on that theory.

[4] Defendant was 20 years old when the victim was killed. Because defendant was sentenced to life without parole and was over 18 years old at the time of the offense, he does not qualify for a youthful offender parole hearing. (§ 3051, subd. (b)(4); *People v. Hardin* (2024) 15 Cal.5th 834, 864.)

[5] Our opinion in case No. E041967 was presented as an exhibit in the trial court but not included in the record on appeal. We take judicial notice of our opinion in case No. E041967. (Evid. Code, § 452, subd. (d).)

9

In the prejudice analysis, this court wrote, "This was not 'an accidental killing' case. Defendants went to [the victim]'s home armed and intent on robbing [the victim]. Although the jury found that [defendant] did not personally and intentionally discharge a firearm and proximately cause the death of the [the victim], such finding cannot be looked at in a vacuum. The jury also found that [defendant] harbored the intent to kill in order to commit the robbery, facilitate an escape, or avoid detection." (*People v. May*, *supra*, E041967 at p. *7.)

Further along in that opinion, this court again wrote that the killing of the victim was not accidental and the jury "did find that [defendant] harbored the intent to kill 'in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection.' " (*People v. May*, *supra*, E041967 at p. *9.)

Contrary to what we wrote in 2008, the record does not indicate that the jury found defendant harbored an intent to kill. The jury found defendant "did *not* personally and intentionally discharge a firearm" proximately causing the victim's death. (Italics added.) (§ 12022.53, subd. (d).) The special circumstance instruction required that "[t]he murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection," (CALJIC No. 8.81.17) and permitted the mens rea to be "reckless indifference to human life" if defendant was "a major participant" in the robbery (CALJIC No. 8.80.1). The first degree felony murder instruction permitted a guilty verdict if the killing was accidental, so long as defendant had the specific intent to

10

commit robbery. (CALJIC No. 8.21.) The prosecutor argued that the killing was accidental.

D.      2019: PETITION FOR RESENTENCING

In 2019, defendant petitioned the trial court for resentencing on the basis that his felony murder conviction should be set aside because defendant was not a major participant in the robbery, and he did not act with reckless indifference to human life. (*People v. Law* (April 27, 2020, E072845) [nonpub opn.] [262 Cal.Rptr.3d 268, 272] (*Law*).)[6] The trial court denied defendant's petition because the jury was instructed on reckless indifference and being a major participant as part of the special circumstance allegation, and the jury found the allegation true. (*Ibid.*)

E.      2020: APPEAL FROM SUMMARY DENIAL

Defendant appealed the denial of his petition. Defendant contended that the evidence of reckless indifference was insufficient under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Law*, *supra*, 262 Cal.Rptr.3d at p. 272].) This court rejected that assertion. In presenting the law concerning reckless indifference, this court defined the term as " 'engaging in criminal activities known to carry a grave risk of death.' " (*Law*, at p. 275.)

---

[6] We take judicial notice of our 2020 opinion in case No. E072845. (Evid. Code, § 452, subd. (d).) As explained further *post*, at our Supreme Court's direction, this opinion was vacated and thus depublished. We cite the opinion only for the procedural history of this case. We use the published page citations for convenience.

Unfortunately, in our analysis, we did not expressly explain in what respect, if any, the evidence supports a finding of a grave risk of death. (*Law*, *supra*, 262 Cal.Rptr.3d at pp. 277-278.) In explaining why the evidence of reckless indifference satisfied the *Banks* and *Clark* factors, this court wrote:

"[Defendant], in contrast, was willingly involved in the violent manner in which . . . [the] robbery took place. He and [codefendant] not only broke into the victim's house armed, but they used the guns to threaten the victim and his roommates throughout the duration of the robbery. . . . [Defendant] watched without intervening when [codefendant] pistol whipped the victim once and tried to do it again. Being at the scene of the shooting, he could have tried to stop [codefendant's] violent behavior or to help the victim once he had been shot, but he did neither. We agree with the People that this sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life. Indeed, we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun,[7] and was present for the shooting did not meet the standard in section 190.2, subdivision (d). The defendants who have been able to get their special circumstance findings vacated under *Banks* and *Clark* are those who were not wielding guns themselves[8] and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only)."

---

[7] Contrary to what we wrote in 2020, the jury's verdicts reflect defendant did not use a firearm.

[8] Again, the jury found defendant did not use a firearm.

(*Law, supra,* 262 Cal.Rptr.3d at pp. 277-278.)  We affirmed the denial of defendant's petition.  (*Id.* at p. 278.)

### F.       2020-2022:  SUPREME COURT

The Supreme Court granted defendant's petition for review (*People v. Law* (April 27, 2020, E072845) [nonpub opn.] review granted July 10, 2020, S262490), but deferred briefing pending the disposition of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).  In *Strong*, the Supreme Court considered whether a jury's special circumstance finding that the defendant was a major participant who acted with reckless indifference to human life can support a denial of a defendant's resentencing petition when the jury's findings were made prior to *Banks* and *Clark*.  (*Strong*, at p. 703.)  The Supreme Court concluded that a pre-*Banks/Clark* special circumstance finding could not support a summary denial because "[f]or petitioners with pre-*Banks/Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time." (*Strong*, at p. 718.)

In September 2022, the Supreme Court transferred defendant's case back to this court with directions to vacate our prior opinion and reconsider the case in light of *People v. Strong*.

### G.       2022:  REVISED OPINION

As directed, we vacated our 2020 opinion.  (*People v. Law* (Oct. 14, 2022, E072845) [nonpub opn.] [2022 WL 7973839, *1] (*Law-2*).)[9]  In October 2022, we

---

[9]  We take judicial notice of our 2022 opinion in case No. E072845.  (Evid. Code, § 452, subd. (d).)

13

issued an opinion reversing the trial court's denial of defendant's petition and directing the trial court to issue an order to show cause why defendant's resentencing petition should not be granted. (*Id.* at p. *3.) We explained that an OSC should issue "because [the jury's] 2006 special-circumstance finding predates *Banks* and *Clark*, and the sufficiency of the evidence review we conducted in our now-vacated opinion does not change that fact. 'Neither the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the [prima facie] determination section 1172.6 requires.' " (*Id.* at p. *3.)

### H. ORDER TO SHOW CAUSE AND RULING

The trial court issued an order to show cause. The People asserted defendant's petition should be denied because he was the actual killer. Alternatively, the People contended that, if defendant was not the actual killer, then he was a major participant who acted with reckless indifference. In defining reckless indifference, the People wrote, "Recklessness is also determined by an objective 'law abiding person' test."

In the trial court's written ruling, the trial court asserted the "reckless" factor is subject to an objective standard, which means " 'what "a law-abiding person would observe in the actor's situation." ' " The trial court defined "indifference" as "defendant's conscious disregard of risks known to him or her."

In its analysis of the reckless indifference element, the trial court found "defendant knew of the likelihood of an accidental discharge" due to codefendant having cocked a gun. The trial court further concluded, "[Defendant] knew an

14

intentional or accidental killing could occur. . . . He knew what he was doing was dangerous to human life and decided to do it anyway."

**DISCUSSION**

A. <u>RECKLESS INDIFFERENCE</u>

Defendant contends the trial court erred in defining reckless indifference as meaning there is a foreseeable risk of death. Defendant asserts reckless indifference requires there be a grave or significant risk of death. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) We agree.

"In criminal cases an appellate court may take into consideration the ' "judge's statements as a whole" [when they] disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in "secondary remarks" but in [her] basic ruling.' " (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1303.) In the instant case, the trial court's understanding of the law is set forth in the trial court's ruling, as opposed to stray remarks. Accordingly, we will review the trial court's presentation and application of the law of reckless indifference. Because this is a purely legal issue, we will utilize the independent standard of review. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

Reckless indifference means " 'knowingly engaging in criminal activities known to carry a grave risk of death.' " (*People v. Emanuel* (2025) 17 Cal.5th 867, 883 (*Emanuel*).) " 'The degree of risk to human life is crucial to the analysis.' " (*Id.* at p. 884.) There must be a " 'significant risk of death.' " (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)

15

" ' "Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" . . . ; "only knowingly creating a 'grave risk of death' " satisfies the statutory requirement.' [Citation.] . . . [P]articipation in a ' "garden-variety armed robbery," ' i.e., one in which the only factor supporting a reckless indifference finding is that a participant was armed with a gun, is insufficient without more to establish reckless indifference." (*Emanuel*, *supra*, 17 Cal.5th at p. 884.)

In its ruling, the trial court asserted that " 'recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation." ' " The trial court's presentation of the law of recklessness failed to include the requirement that there be a significant risk of death, which is a crucial part of the reckless indifference analysis. (*Emanuel*, *supra*, 17 Cal.5th at p. 884.) By omitting a critical part of the law, one can infer that the trial court did not have a full understanding of the meaning of reckless indifference.

That inference is confirmed by the trial court's findings, in which it found, "[T]he firing of the weapon here was not deliberate in the moment the gun went off. What is clear is that defendant knew of the likelihood of an accidental discharge." The trial court concluded, "[Defendant] knew an intentional or accidental killing could occur." The trial court's findings reflect an incorrect belief that a foreseeable risk of death can satisfy the reckless indifference element.

At no point in the trial court's ruling is there an indication that the trial court understood that reckless indifference requires a significant risk of death. The trial court did not include that requirement in its presentation of the law, its analysis of the

evidence, or its conclusion. The trial court found only that there was a foreseeable risk of death; that finding is insufficient to maintain defendant's conviction. (*Scoggins*, *supra*, 9 Cal.5th at p. 677 [" 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement"].)

It is the trial court's place to decide, in the first instance, " '[t]he degree of risk to human life' " (*Emanuel*, *supra*, 17 Cal.5th at p. 884), and defendant's awareness, if any, of that degree of risk. (See *Strong*, *supra*, 13 Cal. 5th at p. 718 ["For petitioners with pre-*Banks/Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time"].) We cannot say whether the trial court " 'would have reached the same result using correct legal standards.' " (*Reyes*, *supra*, 14 Cal.5th at p. 992.) Therefore, we reverse the ruling so the trial court can consider the merits of defendant's petition under the proper legal standards. (*Ibid.*) We express no opinion on the merits of defendant's petition.

B. REMAINING CONTENTIONS

Defendant raises several other contentions on appeal: (1) there is insufficient evidence of reckless indifference; (2) there is insufficient evidence of defendant being a major participant; and (3) if defendant's age at the time of the killing was not preserved as a factor to consider on appeal, then defendant received ineffective assistance of counsel.

17

We do not address the sufficiency of the evidence arguments because, as we explained in our 2022 opinion, " 'Neither the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the [prima facie] determination section 1172.6 requires.' " (*Law-2*, *supra*, E072845 at p. *3.) The trial court, using the correct standards, needs to rule on the petition in the first instance. The ineffective assistance of counsel argument has been rendered moot because we can offer no further relief than reversal, which we have already concluded is necessary. (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321 [an issue is moot when no practical relief can be provided].)

C.    ACTUAL SHOOTER

The People contend defendant is ineligible for relief because he is the actual shooter.

There is a theory under which defendant could be the actual shooter. The jury found defendant "did *not* personally and intentionally discharge a firearm" proximately causing the victim's death. (Italics added.) (§ 12022.53, subd. (d).) It may be that the jury found defendant was the shooter, but he accidentally discharged a firearm. That theory is supported by the various hearsay statements of codefendant telling people that defendant accidentally shot the victim and defendant's hearsay statements admitting he shot the victim.

The problem with that evidence is the hearsay statements directly contradict Anderson's eyewitness testimony that codefendant was the shooter. It is also difficult to reconcile the theory that defendant was the actual shooter with the jury's total rejection

of the firearm enhancement allegations. For example, the guilty verdicts on the assault with a firearm counts combined with the findings that defendant did not personally use a firearm during the assaults tend to indicate that the jury viewed defendant as an aider and abettor. (See *People v. Henley* (2022) 85 Cal.App.5th 1003, 1018 [when no new evidence has been introduced at the OSC hearing, a court cannot ignore a jury's not true findings on firearm enhancement allegations and find the defendant used a firearm]; see also *People v. Hart* (2025) 113 Cal.App.5th 1099, 1114 ["[N]o new evidence on the relevant fact was presented at the 1172.6 evidentiary hearing—and the trial court in each case made a finding that directly contradicted the jury's based on the same evidence that was before the jury on the issue"].)

The People contend that defendant could be the actual shooter because codefendant's jury found codefendant used a gun but did not find that he discharged a gun. Notably, codefendant's jury was not given a verdict form that included an allegation that codefendant discharged a firearm; they were only given firearm use allegations, which they found true.[10] Thus, it is difficult to find significance in there not being a finding that codefendant discharged a gun.

As explained *ante*, the trial court needs to be the first to rule on defendant's petition, under the correct legal standards. (See *People v. Strong*, *supra*, 13 Cal. 5th at p. 718.) We cannot say whether the trial court will find defendant was (a) the actual shooter, (b) a major participant who acted with reckless indifference, (c) an aider and

---

[10] We take judicial notice of the clerk's transcript in Court of Appeal case No. E041967, *People v. May and Law.* (Evid. Code, § 452, subd. (d).)

abettor who was aware of a risk of death but not a significant risk, or (d) something else. (See *Reyes*, *supra*, 14 Cal.5th at p. 992 [we cannot say whether the trial court " 'would have reached the same result using correct legal standards' "].) We must let the trial court make that determination in the first instance. We express no opinion on the merits of defendant's petition.

### D. REMAND

The jury's verdict form for the special circumstance does not expressly include what role defendant had in the killing, e.g. actual shooter or aider and abettor. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 728-729 ["The verdicts as to each defendant included a special finding of either true or not true that the particular defendant was the actual killer"]; see *People v. Pearson* (2012) 53 Cal.4th 306, 322-323 [verdict form included options for intent to kill or reckless indifference].)

In defendant's direct appeal from his convictions, this court asserted, without a basis in the record, that defendant harbored an intent to kill. (*People v. May et al.* (Sep. 5, 2008, E041967) [nonpub opn.] [2008 WL 4099017, *7, *9].)

In defendant's appeal from the initial denial of his resentencing petition, this court (1) relied upon defendant's use of a firearm despite the jury's rejection of all the firearm use allegations, and (2) failed to explain whether the evidence supports a finding of a significant risk of death. (*Law*, *supra*, 262 Cal.Rptr.3d at pp. 277-278.) In the trial court's ruling following the OSC hearing, it omitted the crucial requirement of a significant risk of death.

We made the foregoing list of issues in this case for the sake of the busy trial court. We hope this list will aid the trial court in avoiding confusion on remand.

## DISPOSITION

The order is reversed. The matter is remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.